MARY SHERRELL ET AL., (HEIRS OF ALFRED SHEPARD,) APPELLANTS, VS. ELIJAH S. SHEPARD, ADMINISTRATOR OF A. SHEPARD, APPELLEE.

ELIJAH S. SHEPARD, ADMINISTRATOR, APPELLANT, VS. MARY SHERRELL ET AL., APPELLEES.

1. Upon a sale of personal property of an estate it is the duty of the administrator to take a promissory note or bond with good security for the credit extended. He is not chargeable with the amount immediately when he acts in good faith and with ordinary care. He becomes liable at the expiration of the time of credit. and to discharge himself he must show that the money, if not received, was lost without any default or negligence on his part. The burden of proof is upon him to show, first, that he took good security, and second, that the subsequent loss was not attributable to his laches or neglect.

2. The Judge of the County Court is not authorized by the statute to approve securities to obligations for sales of personal property by administrators. Taking good security is a personal duty of the administrator. The simple approval of the surety by the Judge of the County Court is not sufficient. The administrator must prove that the personal security taken was good.

3. Such notes when taken are not to be treated as investments. The administrator should be diligent in their collection, and if an investment is then proper it must be of such character as the law sanctions.

4. An administrator receives a gold receipt from the decedent. This receipt is executed to the deceased in his lifetime by a person engaged in trade, with whom the gold is deposited for safe-keeping. The depositary after the qualification of the administrator always denies his liability to the estate. The administrator delays suit for over two years, and sues at a time when a recovery of a judgment in due course of law would not have resulted in realizing the money. The depositary died before the institution of the suit, and up to the time of his death was considered solvent. Under these circumstances the administrator is liable for the debt.

5. An administrator receives a note from the decedent. The maker thereof is a person engaged in trade. He was reputed solvent, paid the interest, and the administrator, had he insisted upon payment, could have realized the amount before his death. The administrator, after a delay of more than two years, and after the death of the maker, sues and the estate is found insolvent. The evidence shows that the purpose of the administrator was to hold the note until distribution, and to treat it as cash or an investment. He is liable for the loss. It is the duty of an administrator to collect the debts of an estate within a reasonable time after his qualification. He must act as a discreet business man would whose duty it was to collect and distribute the estate within the time required by law. He must call in such debts. He cannot treat them as investments upon personal security.

6. An allowance for sums paid an auctioneer for the sale of personal property is proper ; so, also, is a bill for advertising time and place of sale.

7. The administrator in deference to, and at the request of the heirs, has a partition of the lands of the estate by the County Court, each person entitled taking his share. The parties thus availing themselves of and consenting to such proceedings are estopped from refusing to pay their share of all legitimate expenses incurred thereby, or in connection therewith, and cannot set up a want of jurisdiction in the court, and thereby have the administrator, who acted in deference to them, charged with the entire expense.

8. The administrator is entitled to a fair and just compensation for all services rendered in connection with the estate. When a per diem of from $2 to $2.50 is allowed for services in the absence of controlling and clear evidence, showing that it is too much, it should not be disturbed by the Circuit Court or by this court.

9. An administrator is not entitled to commissions on the gross amount for which the personal property sold. He is entitled to commissions on the amount of the *money* received at the sale, and on all sums of *money* thereafter realized from the credits extended. A commission of six per cent. on the money thus collected is a reasonable allowance.

10. A like commission on money collected by the administrator from notes and accounts left by the deceased is a reasonable compensation for the service.

11. The sum of $1,942.25 cash comes into the hands of the administrator from the deceased. He retains it on hand about two months and then disburses it. A commission of three per cent. and an allowance for per diem is a sufficient allowance for the service. It is not too much.

12. Manner of accounting.—On all moneys received the interest at the annual balances is added to the principal. On notes or other securities lost by the neglect or laches of the administrator, only simple interest is charged except under special and peculiar circumstances, showing something more than simple neglect.

13. An administrator is entitled to compensation for services *bona fide* rendered in endeavoring to collect and in investigating the condition of notes, the makers of which were reputed to be insolvent.

14. An administrator is not to be debited as of course with costs and charges attending unsuccessful suits brought by him upon the paper belonging to the estate. If, under the circumstances, the litigation was just and proper, and apparently for the benefit of the estate, and brought *bona fide*, he is entitled to credits for costs and charges, and for services rendered in connection with the litigation.

15. Upon the institution of a suit against him, the administrator may relieve himself of liability for interest by paying the money into court, otherwise the legal rate of interest on each class of debts existing at the commencement of the suit continues according to law.

16. To the extent that charges paid by the administrator to the Judge of the County Court are illegal, to that extent should the administrator be charged therewith.

Appeal from the Circuit Court for Gadsden county.
The facts of the case are stated in the opinion.

*John W. Malone* for Shepard's Heirs.

The first exception of the plaintiffs embraces two items, to-wit: the McAlpin note and the gold certificate, which we will consider in their order.

The McAlpin Note.—The defendant in his answer says that he realized from the sale of the personal property of

said Alfred the amount of $1,727.35 as per his account sales, less $22, the amount of the McAlpin account not collected.

It appears from the evidence that H. McAlpin purchased a portion of the personal property of the said Alfred at the sale thereof by the defendant, and afterwards, on the 20th of December, 1870, made his promissory note with J. J. Martin as surety in the sum of $22 payable twelve months after the date thereof, and delivered the same to the defendant for the price of said property. This note was not paid at maturity, and the defendant made no effort to collect it until the 4th of March, 1874, when he put it in suit. Judgment was rendered against McAlpin and Martin on the 5th of May, 1874, for $27.80 and costs, execution issued on said judgment on the 25th of May, 1874, and was returned by the sheriff " *nulla bona* " on the 6th of April, 1878. The surety was approved by the Judge of Probate who thought him good. The said Judge always made inquiry as to the pecuniary standing of parties before he approved notes.

The defendant has failed to show that either the principal or surety of this note was good and solvent at the time it was made and the credit given, and that they have since become insolvent. The onus is upon the defendant to prove these facts in order to relieve himself from liability for the amount of this note. (Thomp. Dig., 202.) Besides it appears that the defendant failed and neglected to make any effort to collect this note until more than two years had elapsed after it became due, and that it has become worthless and uncollectable.

Under these circumstances we think the defendant should not have been allowed the amount of this note, but should have been charged with the full amount of the sales.

The gold certificate of $673.78 was made by John T. Seegar on the first day of January, 1867, delivered to Alfred Shepard and came into the possession of the defendant immediately upon his qualifying as administrator.

And no effort was made to collect it until the 29th of March, 1873, more than two years after it came .into the defendant's possession and sometime after the death of John T. Seegar.

The defendant himself testifies that John T. Seegar always denied his liability under this certificate of deposit. That he brought suit on it, to collect it, on the 29th of March, 1873, and the presiding Judge ruled that it.could not be admitted in evidence for want of a proper United States revenue stamp, and consequently he failed to collect it. At the time the suit was instituted John T. Seegar had become insolvent and died. But up to the time of his death his credit was considered good in the community, and he was regarded as solvent.

The defendant allows this claim to go out of date, which was a devastavit. Wms. on Extrs., 1805.

It is apparent from the foregoing facts that by proper diligence the defendant might have collected this claim, but he neglected for several years to make.any effort whatever to collect it. Indeed, he waited until the claim had gone out of date, and until Seegar had become insolvent and died, before he moved in the matter. Under these circumstances we insist that the defendant should be charged with the debt. Long's Estate, 6 Watts, 46 ; 9 B. Monroe, 540 ; 11 Wendell, 361 ; 5 Vesey, 839 ; 4 Florida Reps., 118.

To relieve himself from liability on this claim the defendant relies upon the ruling of the Circuit Court for Gadsden county that this certificate was not admissible in evidence in said court, because it was not stamped with the proper United States internal revenue stamp.

This, we insist, ought not to avail him for that purpose, because, first, at the time said ruling was made the defendant had full power and authority under the laws of the United States to affix the proper United States internal

revenue stamp to said instrument, and thus comply with the ruling of said court. Second, at the time the said ruling was made the honorable, the Supreme Court of Florida, had decided the contrary of said ruling to be the law of the State of Florida, and the defendant should have excepted to said ruling and prosecuted his appeal to this honorable court instead of attempting to use it as a cloak to cover the liability which he had already incurred by his negligence in not collecting said claim. U. S. Rev. Statutes, Sec. 3422; also Supplement to Rev. Stat. U. S., pp. 102 and 201; 14 Fla. Repts., 239.

The second exception embraces a number of items, which we will consider in their order. The disbursement of ten dollars to W. J. Gunn was for his services as auctioneer in selling the personal property of the said Alfred. Gunn was engaged one day in doing it, and the compensation paid to him was fair and reasonable according to the defendant's testimony. The law imposed upon the defendant the duty of selling this property, and allowed him compensation for this service. Thomp. Dig., 202 and 208. This disbursement, therefore, was not a proper charge against the estate, but was a personal debt of the defendant's which should be paid out of the compensation allowed to the defendant for this particular service, otherwise the estate will pay twice for this service—once to Gunn and a second time to the defendant.

The disbursement of $19 to Owens & May was for advertising the time and place of sale of this personal property.

This service was connected with and constituted an essential part of the sale itself, hence the same objection which was made to the allowance of the disbursement to Gunn will apply with equal force against the allowance of it.

20

The disbursement of $9 to Commissioners, $3 to R. P. Green, and $6.55 to J. E. A. Davidson were for costs which accrued in a partition suit before the Probate Court for Gadsden county between the defendant and plaintiff.

This proceeding was entirely disconnected with the administration of the estate. Wms. on Extrs., 1575. Besides, the said Probate Court had no jurisdiction to grant partition of real estate, and the said proceedings in that behalt were void, and the costs incurred an unnecessary expense. Therefore these disbursements ought not to have been allowed defendant.

The disbursement of $50 to Stephens & Love, attorneys, was for professional services in the conduct of said partition suit, and is subject to the same objection that is made to the three preceding disbursements.

The allowance of $24 is for services as specified in voucher 44.

Many of the items of service mentioned in this voucher are disconnected with the administration of the estate and were performed by the defendant voluntarily for his own personal advantage and benefit; besides, the allowance is exorbitant in this, that defendant is allowed for a day's service when he was engaged for a few moments only.

The allowance of $125.85, a commission of 6 per cent. on $2,097.32, amount of sales of the personal property, is for compensation for the sale of said property.

The defendant was engaged one day in the performance of this service. The sale was made by Gunn, an auctioneer whom the defendant employed for that purpose, at the price of ten dollars. This was a fair and reasonable price for the service. The notes, which, taken for the purchase money of this property, were written and taken by J. E. A. Davidson, to whom the defendant paid sixteen dollars for this service.

The care and preservation of the property prior to and subsequent to the sale, and up to the delivery thereof to the purchaser, was entrusted to S. S. Strange, whom the defendant employed for that purpose.

The defendant employed S. S. Strange soon after qualifying as administrator to finish gathering the crop, to assist in paying off and dividing with the hands, to superintend the ginning, to take care of the stock and gather them for sale and deliver the property to purchasers. S. S. Strange was engaged in this service for two months and found himself during this time, and defendant paid him twenty dollars for his services.

He performed the service in a very satisfactory manner and the compensation was very reasonable.

The notice of the time and place of sale was advertised by Owens & May, to whom the defendant paid for this service $12.50.

The defendant's services for one day with his buggy and horse are reasonably and fairly worth $2.50. And the defendant charged the estate with $2.50 for this service of selling the personal property.

Under this state of facts we think that such a per cent. on the gross amount of the sales of the personal property as would pay all expenses necessarily incurred in and about said sale by the defendant, and in addition thereto would pay the defendant for the value of his time and service as proved by the testimony, would meet the intention of the statute. The law certainly does not contemplate that the administrator shall make a profit out of the estate entrusted to his care, but simply contemplates the allowance of a fair and reasonable compensation.

The allowance of $58.26, a commission of (3) three per cent. on $1,942.25 coin and currency, of which said Alfred died possessed, and also $15.60, a commission of six per

cent. on $263.56, seem to be gratuitous and not as compensation for any service performed by the defendant.

The allowance of commissions to an administrator on money of which the intestate died possessed, and upon money which the administrator collects, is illegal. 7 Fla. Reps., 44.

It appears that the defendant came into the possession of the above sum of $1,942.25 when he qualified as administrator, and deposited it with William Munroe for about two months, when he disbursed it to the next of kin.

He was engaged a part of a day only in disbursing this money, was put to no expense whatever in and about the same, and charged $2 for this service, which was allowed to him. The defendant thought the allowance of two dollars for this service reasonable and fair, and the Probate Court allowed it to him. If, therefore, the master allowed the defendant the above commissions as a compensation for the custody and disbursement of these moneys he has gone contrary to the order of reference and the evidence in the case.

There is no evidence whatever that the defendant collected $263.56, or any other sum of money.

The Third Exception.—The allowance of $24.58, a commission of three per cent. on $819.40, the amount of the note against John T. Seegar, which was charged to defendant, seems to be gratuitous also, and not as a compensation for any service performed by the defendant.

The defendant is charged with a liability incurred by him for his inexcusable omission of duty, and the master allows him a commission of (3) three per cent. upon this liability as a compensation for his omission of duty.

This is a new principle, and one of first impression, which we think unsound both in law and ethics and ought not to be sustained.

The allowance of $15 is for compensation to defendant in attending the Circuit Court in Liberty county to collect some worthless claims. At the time the defendant performed this service he knew these claims to be utterly worthless and uncollectable, and that any expense incurred upon them would be useless.

Besides it does not appear that defendant made any effort toward collecting these claims, other than attending the Circuit Court for Liberty county several times. On these occasions he saw none of these debtors, had no reason to expect to meet them at court, never communicated with any of them, and never sued any of them, because he knew them to be insolvent. Under these circumstances we think this compensation ought not to have been allowed.

The disbursement of $5 to R. S. Tucker, $8 to J. E. DuPont and $4.35 to S. E. Stewart were for costs incurred in the suit against McAlpin and Martin, and should not have been allowed for the same reason urged against the allowance of the McAlpin note.

Besides the costs paid to Tucker and $5 of the costs paid to DuPont are for the same service and a double charge against the estate.

Defendant's Exceptions.—The testimony touching the subject-matter of the defendant's first exception is to the effect that the defendant qualified as administrator of the said Alfred on the 8th of November, 1870, and immediately thereafter took possession of the Seegar note. More than two years afterwards, to-wit: on the 13th of December, 1872, John T. Seegar departed this life in Gadsden county, and letters of administration on his estate were granted to H. B. Seegar on the 23d of December, 1872. The credit of John T. Seegar up to the time of his death was considered good, and he was regarded as solvent.

The note was overdue and unpaid when it came into the

possession of the defendant, and no action was taken to collect it until the 29th of March, 1873, a period of more than two years after it came to his possession.

A suggestion of the insolvency of the estate of Seegar was made in the Probate Court for Gadsden county on the 24th of April, 1874, and the note has not been collected in consequence thereof.

The defendant testifies in regard to this note as follows: The indebtedness of Seegar originated in loan made to him by Alfred Shepard in his lifetime. In the summer following the death of said Alfred (who died in November, 1870,) the defendant called on Seegar for payment, who informed defendant that he was hard pressed for money, but would pay him as soon as cotton commenced moving. *As defendant had no immediate use for the money at that time, and as Seegar was regarded by defendant and the whole community as perfectly safe*, defendant deemed it most advisable for the interest of the estate not to sue immediately. Defendant called on Seegar again the ensuing fall, and Seegar informed him that he had shipped cotton to pay the debt, and would settle the same on a certain day, or sooner if return of sales should be received, and manifested a great desire for a speedy settlement, and would undoubtedly have met the payment promptly according to promise but for his unfortunate death which occurred a few days prior to the time appointed for payment.

The defendant never instituted suit for collection, because Seegar always acknowledged the claim and promised to pay. Seegar was regarded as a safe man, *was paying interest on the money*, and defendant thought it best to wait until Seegar could raise the money and thereby save the cost and expense of a suit.

Among the papers turned over to defendant, as administrator of Alfred Shepard, was a note on John T. Seegar for

$1,000. In June, 1872, the defendant notified Seegar that he held this note as administrator, and wanted it paid by the following February, as he wanted then to make his final settlement. Seegar then told defendant to put it off until in the fall of that year, and he would pay it as soon as cotton began to stir.

Defendant called on Seegar again in October for payment of said note, and Seegar then told him that he had cotton in Savannah to pay the debt, and that as soon as it was sold he would pay the note. Seegar then told defendant that if he was pushed for the money he would draw on the cotton, but it was no use as the defendant would get the money as soon by a sale as a draw. Defendant then told Seegar not to disappoint him, as he was arranging to make his final settlement in February following. And Seegar told him not to be uneasy as he would pay it as soon as the money came. Defendant's object in calling on Seegar in June, 1872, was to notify him that the note must be paid by the following February so that defendant's final settlement should not be delayed. Defendant had not previously notified Seegar to pay the note. This was the first time defendant named it to him. The note came into the defendant's possession on the day Alfred Shepard's estate was appraised.

The defendant in October, after the June above stated, called on Seegar and told him he must certainly pay the note by the following February, and that defendant was willing that Seegar keep the money until the February, provided that he would certainly pay it at that time.

John T. Seegar in October, 1872, told S. S. Strange to push up defendant to collect said note as he was ready to pay it, and the defendant did not care to collect it. S. S. Strange repeated the above statement of Seegar's to the defendant about a week afterwards, and the defendant then

said that he did not care to collect this note until he knew that all the heirs were ready for a final settlement, as he did not want to pay interest on it. The defendant further said that the note was good, and he was going to hold on to it until the last day in the morning, as he did not know what might turn up.

It is apparent from the foregoing facts that the note could have been collected of John T. Seegar in his lifetime by proper diligence on the part of the defendant, and that it has become uncollectable and worthless on account of and through the negligence and delay of the defendant in enforcing the collection thereof, hence he was properly charged with it. 4 Fla. Repts., 118 ; 11 Wendell Repts., 361 ; 5 Vesey Repts., 839 ; 6 Watts Repts., 46 ; 9 B. Mon. Repts., 540 ; 4 Hayw Repts., 134 ; 2 Y. Col. C. C., 634 ; 2 Green Ch., 300 ; Williams on Extrs., 1806 and 1815 (last Edition); 31 La. An., 311; Stone vs. Creditors.

The testimony touching the subject-matter of the defendant's second, third and fourth exceptions is that the defendant *got mad*, retained attorneys and brought suit on the Seegar note and gold certificate against Seegar's administratrix within six months after the granting of letters of administration to her.

Under these circumstances the law imposes the costs upon this defendant, (Thomp. Dig., 205,) and he ought not to be allowed them against the estate. Besides he had waited until these claims became worthless before taking any action on them, and even then brought the suit to soothe his ruffled feelings. These disbursements were an unnecessary expense, or made necessary by the laches of defendant and should not be allowed to him. Taylor vs. Glanville, 3 Madd. Repts., 178, 2 Madd. Repts., 159 ; Caffrey vs. Darley, 6 Vesey Repts., 497 ; O'Callaghan vs. Cooper, 5 Vesey Repts., 117, note 2 ; Jones vs. Lewis, 1 Cox Repts., 199.

The testimony touching the subject matter of the defendant's sixth exception is that these costs were in excess of the fees allowed by law, and that the master allowed as much of them only as was authorized by the statute. Chap. 1815.

The objection urged against the allowance of a commission of 3 per cent. upon the $1,942.35 will apply to defendant's seventh exception, and the objection to the allowance of a commission of 3 per cent. upon the amount of the Seegar note will apply to defendant's eighth exception.

The defendant's ninth exception was properly disallowed and overruled. Young Admr. vs. McKinne Admrs., 5 Fla. Repts., 542.

*Stephens & Love* for the Administrator.

In this case the administrator was one of the heirs, and both in his individual and representative character he deemed it best for the interests of all parties that the money should remain as it was placed by deceased, as it would not be needed until final settlement and was drawing interest, and deemed both by the deceased and himself as a safe investment; and it was not deemed advisable to subject the estate to attorneys fees in bringing suit when the money was not then required. And though an administrator will be personally liable for gross neglect in failing to collect a debt due the estate, yet he is not liable for neglecting to sue unless he act in bad faith or is guilty of wilful default or gross negligence. Thomas vs. White, 3 Little, p. 177; 14 Am. Decis., p. 56.

Where the administrator exercises a sound discretion with regard to the collection of the assets of the estate he will not be held personally liable—all that a court of equity requires from the trustees is common skill, common prudence and caution. Executors, administrators and guard-

ians are not liable beyond what they actually receive unless guilty of gross negligence, for when they act as others do with their own goods, and with good faith and guiltless of gross negligence, they are not liable. Note, Am. Dec,, 14, pp. 65, 66 ; Calhoun's Estate, 6 Watts, 183 ; Crist vs. Brindle, 2 Rawle, 122.

The general rule for the guidance of executors and administrators in administering their trusts is clearly and sufficiently laid down by Judge Stanard in delivering the opinion of the court in Kee vs. Kee, 2 Gratt., 116–128, and approved in Southall vs. Taylor, 14 Id., 221 : " The duties of the executor are to be performed under the obligations of sound judgment, acting on those considerations of wordly prudence which affect the safety of the pecuniary interests confided to his care. When such judgment, so governed, is fairly exercised and (tested by the facts *existing* and *known* at the *time* it is exercised), is such as would probably be formed by a judicious man managing his affairs with reference to consideration of mere wordly prudence, the executor is justified in acting on such judgment, and so acting is not responsible for alleged losses resulting from his conduct." See Note Am. Dic., 14, 65 and 66.

In view of the facts existing at the time, defendant exercised a sound discretion. It was both his duty and interest so to do, as he was both administrator and heir, and entitled to one-fourth interest in the estate.

An administrator is not chargeable with the consequences of a disastrous exercise of his discretion unless it be accompanied with negligence so gross as to raise presumption of willful misconduct. Willbough's Estate, 4 Wharton, 177 ; 1 Wharton Dig., p. 747, par. 119.

There is a distinction between the liabilities of executors with respect to creditors and those with respect to legatees, and there are many cases in which they would be discharged

as against the latter though not as to creditors. McNair's Appeal, 4 R., 148 ; 1 Wharton Dig., 749, pars. 139–40.

These authorities support the principle that so long as executors manage the estate of their testator in accordance with the ideas which testator himself entertained of it, and do nothing but what there is reason to believe he would have approved could he have been consulted, it would seem unreasonable to make executors responsible for losses as respects legatees. The investment was made by deceased and considered safe in the hands of one possessing not only his·unlimited confidence, but also that of the community in which he lived.

Compensation of administrators :

The statute governing the matter of compensation of administrators is found in Thompson's Digest, p. 208, Sec. 4, and was construed by this court in the case of Moore *et al.* vs. Felkel, 7 Fla., 44.

This statute and the construction thereof do not prescribe any measure or gauge of compensation for administrators, &c., save on money arising from sale of personal property, lands, &c., on which 6 per cent. commission is allowed in addition to a fair, just and reasonable compensation for their services.

What is fair, just and reasonable is to be judged by the court auditing their accounts, and may be more or less than 6 per cent., according to the circumstances of each particular case; and a Court of Chancery will not interfere with the exercise of the discretion vested by law in the Probate Court in the allowance of commissions to an administrator except in case of manifest and flagrant abuse, but on the contrary will be governed by the decisions of the Court of Probate as the safest guide. 2 Am. Chan. Dig., p. 206, Sec. 619 ; Powell *et al.* vs. Burruss, 35 Miss., 605.

It has never been adjudged in the court of any State that

administrators and executors are not to be compensated for the trouble, anxiety and responsibility of collecting debts and disbursing the assets of the estate. The principal responsibility of an administrator or executor is incurred in making disbursements; he is responsible for every dollar he pays out. No allowance is made to him for any deception which may have been practiced upon him, or for any error or mistake he may make. In all things he is held to the strict hard letter of the law that is often obscure and difficult of application, and if, in the judgment of the court, he has made a mistake, however honestly, he is held responsible *de bonis propriis*, can it be contended by heirs and legatees that for all this responsibility, care, loss of time and anxiety on the part of the administrators that they are entitled to no compensation other than the per cent. on the sale of the personal and real estate.

In this country it is generally considered just that a trustee should receive compensation for his services, which is gauged by a percentage on amount of estate. 2 Abbott's National Dig., p. 501, sec. 153, and citations.

Executors and administrators are entitled to commission in paying legacies as well as debts, and if the income be insufficient their compensation must be made from the principal of the estate. West vs. Smith, 8 How., 402; 2 Abbott's National Dig., 501, sec. 154; 14 Ga., 416; Millen's Dig., p. 32, sec. 16; Millen's Dig., 33, sec. 26.

And this allowance of commission is not alone to compensate for the labor and trouble expended in. administering estate, but also to reward the administrator for the responsibility incurred and his fidelity in discharge of the trust. 33 Miss., p. 605.

The costs paid by defendant to the Judge of Probate it is charged are greater in amount than authorized by law, and it is claimed that defendant is chargeable with the surplus thus paid.

It is the duty of the County Judge as Court of Probate to audit and pass the annual settlements of administrators and to protect and guard the estate against improper charges. For these duties the Judge is allowed certain fees, and is given the power to enforce payment. Administrators generally are not learned in the law, but rely upon the integrity and competency of the officer appointed by the State, and deeming the charges just and right in good faith pay the charges demanded. Indeed it is almost impracticable for the administrator to resist, and such payments may be said to be paid under order of court. The excess is not large enough to authorize an appeal and the administrator is compelled to pay. The administrator should not be compelled to refund in such cases where he acts in good faith without fraud or collusion.

Where there has been no fraud or improper conduct on the part of administrators, and the money has been disbursed *bona fide* in the performance of their duties, the court will not critically examine their disbursements in contesting or prosecuting claims, although such contest has been entered into partly for their own interest. 1 Wharton Dig., p. 760, secs. 216, 217 ; 1 Am. Chan. Dig., p. 383, sec. 22 ; 1 Paige, 82.

Executors are not chargeable with interest on funds in their hands during the pendency of their case in the orphans court on exceptions to the report of the auditors. Hooper vs. Brinton, 8 Wharton, (Penn.) 73 ; 1 Wharton Dig., p. 762, sec. 236.

In this case the master should not have charged the administrator with compound interest on an alleged balance due the estate after the commencement of this suit, and after the administrator, in consequence of its institution, ceased to make his annual returns to Probate Court. If by reason of its institution the defendant is prevented from

making a final settlement with the heirs, and is forced to hold all moneys subject to the result of this suit, he should not be compelled to pay compound interest on such balance in his hands, more especially when such balance consists wholly of insolvent papers charged to administrator.

Power of County Court to sell real estate for distribution. Statute of Fla., 1862, Chap. 1358 ; Richard Wilson vs. Matthison, 17 Fla., p. 630 ; Statute of Fla., 1870, Chap. 1732.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

Mary Sherrell and the other parties named above filed their bill in the Circuit Court for Gadsden county against Elijah S. Shepard, administrator of the estate of Alfred Shepard, deceased. The plaintiffs and the defendant are the heirs at law and distributees of the estate of Alfred Shepard. Plaintiffs prayed a discovery of the estate, both real and personal, of the decedent which came to the hands of the administrator, for an account of that portion disposed of, a discovery of what remains on hand, that the annual settlements of the administrator may be opened and set aside, that upon said accounting the assets might be applied in due course of administration, and that the portion of the residue due plaintiffs be decreed to be paid to them.

After answer denying in many respects the liability of the administrator as charged, and setting up various matters of defence, and after replication thereto, the Chancellor entered an order appointing a commissioner to take testimony in the cause. Upon the coming in of the report of the commissioner containing the testimony taken, there was an interlocutory decree passed appointing a master to state an account, giving general directions as to the method of stating it, and to take further testimony touching the

matters referred. The master reported an indebtedness of the administrator of nineteen hundred and eighty-seven dollars and fifty-four cents.

To this report both the plaintiffs and the defendant filed exceptions, and from the order of the court made upon the hearing of the exceptions both parties appealed. We consider each of the appeals in this opinion.

We take up first the exceptions of the plaintiffs as insisted upon in their petition of appeal.

The first exception is: "Because the master failed to charge the defendant with the full amount realized from the sale of the personal property of the said Alfred, to-wit: $1,727.35, and also with the amount of a certificate of deposit in gold which was made by John T. Seegar, and delivered to the said Alfred in his lifetime, to-wit: $637.78."

The objection to the first item is upon the ground that the master failed to charge the defendant with the amount of the note of McAlpin for personal property purchased.

The statute requires the administrator when giving credit upon a sale of the personal property of the decedent to take a bond or promissory note with good security of the purchaser. In this case he did take a promissory note with one surety. The Judge of the County Court testifies that he " approved the note of McAlpin and Martin, which was a joint and several note, and when he approved the said note he " (here a word is evidently omitted. We presume it was thought) " it good for the amount, and always made inquiry as to the pecuniary standing of parties before he approved notes."

This is not sufficient to excuse the administrator. We know of no statute which gives the Judge of the County Court any power in the matter of this approval; and the question of sufficiency is not referred to him for enquiry,

making his judgment an excuse for laches or neglect upon the part of the administrator. While the Judge of the County Court is a competent witness, yet his conclusions, omitting *all facts* which constituted the basis of them, cannot be accepted as proof. There is nothing that discloses the nature or the extent of his enquiry, the facts he ascertained, the actual or reported pecuniary standing of the party in the community, or anything which would enable the Chancellor to conclude that the administrator discharged his duty by taking a note with good security in this instance as required by law. Conclusions as to this fact are to be found by the Chancellor upon proof of the circumstances. This is not a matter left to the judicial judgment of the Judge of the County Court. If a person accepts the office of administrator he " must use due diligence and not suffer the estate to be injured by his neglect," and in case of a loss, accompanied by unexplained delay, he must show facts of such character as in law excuse it. Two years and several months transpired here without suit, and we see no effort to obtain security for the amount or to collect it during this time, and when sued the return was *nulla bona.* Unexplained delay and loss being shown, the burden of proving the taking good security or the exercising of reasonable caution, prudence and care in the matter of taking the security and collecting the debt, devolved upon the administrator. Under all the circumstances stated the administrator should have been charged, and this exception should have been sustained. To hold otherwise here would be equivalent to legislation authorizing the administrator to sell personal property upon security to be approved by the Judge of the County Court, for all that appears is the statement of the Judge that he approved the security, and that his custom was to enquire as to the pecuniary standing of parties before he approved notes.

The sale of personal property authorized by the statute does not contemplate that the notes taken for it are to be treated as an investment for the benefit of either creditors or distributees. Credit is allowed in view of the fact that such a course is calculated to realize a better price for the property.

It is the duty of the administrator to be diligent in the collection of personal property notes when due, and if an investment of the funds realized is proper under the then existing circumstances of the estate such investment must be of that character as the law sanctions. In this case it does not appear that the administrator took security of the character required by the statute, and there is unexplained delay to sue for two years or more.

In England such sales are made for cash, and the executor is immediately chargeable with the price. The rule in Pennsylvania, as it is in South Carolina and Georgia, upon the general subject of the liability of administrators, is certainly as liberal as in most of the other States. (Neff's Appeal, 57 Penn. State, 95, by Judge Sharswood.) The case of Johnston's Estate, 9 Watts & Sergeant, 108, is in principle this case. In that State the rule was to sell the personal property at a short credit, taking notes with security. The Supreme Court of that State, in Johnston's Estate, 9 Watts & Sergeant, 108, says: "When this method is adopted he" (the administrator) "is not chargeable when he acts with good faith and ordinary care immediately on the sale, but he becomes liable at the expiration of the time of credit, and to discharge himself he must show that the money, if not received, was lost without any default or negligence on his part. Thus if he is able to prove the solvency of the purchaser and surety at the time of sale, and that in the intermediate time he became insolvent, or that he used ordinary diligence to obtain payment and failed, he is entitled

to an exoneration.  But this it is incumbent on the executor to prove, as he is *prima facie* liable and the burthen of proof is thrown on him." The court, after reciting the facts, say : "It is conceded that the debtor and security were good at the time of the sale, so that the case depends on the question whether the administrator has shown that the loss has arisen from circumstances over which he had no control, and not in consequence of any default of his. The facts are that he gives a credit of six months, and so far as appears takes no further steps to collect the amount due.  He neither commences suit nor does he even demand payment until six months after the note arrived at maturity and after the time given for the settlement of the estate.  It is a case not of ordinary care, but of gross negligence, for he has failed to show that he made any efforts whatever in proper time to recover the money." See also Scharborough vs. Watkins *et ux.*, 9 B. Mon., 540 ; Brazeale's Admr. vs. Brazeale's Distributees, 9 Ala., 497 ; Starke vs. Hunton, 2 Green's Chancery, 300.  The administrator here should have been charged by the master with the amount of this note, principal and interest, as of the date it became due.  Southall's Admr. vs. Taylor *et als.*, 14 Grat., 283.

The next exception is because the master failed to charge the defendant with the amount of a receipt of John T. Seegar for $637.78.  This receipt was given by Seegar to the deceased on the first of January, 1867, for that amount of gold deposited with him.

Alfred Shepard died in November, A. D. 1870, and the defendant obtained letters of administration on his estate on the eighth of November of the same year.  This sum was charged to the administrator as so much cash in his account filed 17th January, 1871.  In his account of 1876 a credit for this sum and interest is entered in the words

following: " Gold receipt against the estate of John T. Seegar failed to recover in court and interest $916.66." The administrator testifies that Seegar always denied his liability upon the receipt. On the 29th of March, 1873, the administrator instituted suit against Hester B. Seegar, the administratrix of John T. Seegar, he, J. T. S., having died on the 13th December, A. D. 1872. On the 24th of April, 1874, the administratrix of Seegar filed a suggestion of insolvency in the County Court. The administrator failed to obtain judgment upon the receipt, because, as he states: " The Judge presiding ruled that the certificate could not be introduced as evidence of the debt for want of the proper U. S. revenue stamp." On the same day that the suit was instituted on the gold receipt the administratrix of Seegar was sued upon a promissory note of Seegar for $1,000. A suggestion of the insolvency of the estate of Seegar was filed in the Probate Court on the 24th of April, 1874. A judgment was obtained on this note for $1,147.90 on the 12th of April, 1875. It is admitted by the parties that the credit of John T. Seegar up to the time of his death was considered good in the community, and that he was regarded as solvent, and it appears from the record that he was a merchant in the town of Quincy, Florida.

The question is whether to the extent a loss has occurred to the estate the administrator is responsible.

The defendant here obtains letters of administration on the eighth (8th) of November, 1870, charges himself with this receipt as cash in January, 1871, and neglects to bring suit against its maker, a solvent merchant in good standing, who at all times denied his liability, until the 29th of March, 1873, over two years and three months after his appointment, and at a time at which a suit could not have resulted in its recovery, as is shown by the result of the suit upon the promissory note of Seegar instituted at the

same time. Independent of any question of the matter of the neglect to place a stamp upon the certificate, or the necessity for so doing, we think the facts here show a degree of negligence which no prudent man would practice, and in view of the admitted denial of the liability by Seegar the case is one of careless indifference and gross negligence. Why suit under these circumstances should have been so delayed we cannot see. For over two years he neglects to make even a demand for this money so far as the records disclose. Indeed he seems to have desired to treat it as an investment, when the laws of this State prohibit such an investment upon personal security.

" In the case of Lawson vs. Copeland, 2 Brown's C. C., 156, an executor was charged with a bond debt for neglecting to take legal steps to collect it, in consequence of which it was lost. So in Powell vs. Evans, 5 Ves., 843, he was charged for neglecting to call in money lent out by the testator on personal security, and the debtor became insolvent." Says Mr. Justice Nelson in Schultz vs. Pulner, 11 Wend., 366 : " If debts are not collected within a reasonable time after letters testamentary or administration, either by personal application or suit, which by such means may have been collected, whether the debts have been lost by such delay or not, or whether their motives may have been pure or not, the law holds them personally responsible to the creditors and distributees. There is nothing hard or unjust in this principle. It is only exacting of these representatives that diligence and attention to the business of others voluntarily assumed upon themselves which they should and which every discreet man would bestow upon his own." See also Stark vs. Hutton, 3 N. J. Eq., 306, 307.

In determining what is reasonable diligence in such matters it must be remembered also that an administrator's duty is

to wind up the estate at as early a day as practicable. As remarked by Judge Sharswood in Neff's Appeal, 57 Penn. State, 97, "an administrator is under obligation to diligence in preparing for distribution." It is also the fact that in this case this debt was due by one engaged in mercantile pursuits subject to the incidents and hazards of trade. Such obligation should be collected as soon as practicable. See remarks upon this subject in Southall's Administrator vs. Taylor, 14 Grat., 279, 282; 31 La. Ann., 312.

The case of Kee's Executors vs. Kee's Creditors, 2 Grat., 116, cited by appellant and defendant, will be found upon examination to present facts of a peculiar character entirely unlike the facts in this case.

The case of Southall's Administrator vs. Taylor, 14 Grat., 283, cited by appellant and defendant, does not support the view that in this matter the administrator here under the circumstances of this case would be excused. In that case one of the questions was, whether the administrator was bound for the amount of a bond. The court say: "It seems that Southall is clearly bound for the amount of the bond in question on the ground that he did not use ordinary diligence in respect to it after it fell due. He suffered nearly twelve months to elapse after its maturity without (so far as the record shows) making any demand for its payment." The case of Thomas vs. White, 3 Little, 177, was where under very peculiar circumstances and contrary to the general rule, an administrator was not charged with a loss occasioned by his not bringing suit until the act of limitations opposed a bar to recovery. The rule in South Carolina, as announced by its courts in 1841, cannot prevail in this State to its full extent, as there personal security was what was usually required for investments. See Glover vs. Glover, McMullen's Equity, 154, but as appli-

cable to the subject-matter of this case we think that the principles announced sustain our conclusions. Taveau vs. Ball, 1 McCord's Chancery, 464; Mikell vs. Mikell, 5 Rich. Eq., 225. No interest was due here until demand made.

Seegar was simply a depositary of this gold. The transaction was not a loan. Payne vs. Gardner, 20 N. Y., 170. Under the circumstances we think that interest should be allowed only from the time when the suit was commenced for its recovery.

The next exception which we examine is that of the defendant to the charge of the administrator with the amount of the Seegar note. This note was dated January 1, 1867, due one day after date, and went into the possession of the administrator about the 8th November, 1870. On the 13th December, 1872, Seegar, the maker, died, and on the 23d December Hester B. Seegar qualified as his administratrix. The administrator sued the administratrix of Seegar on the 29th March, 1873. A suggestion of the insolvency of the estate was filed on the 24th April, 1874, and the note has not been collected in consequence thereof. There was delay to sue here therefore, an over-due note of over two years during the life-time of its maker, and when his administratrix is sued three months afterwards insolvency is suggested. During the life of the maker he was believed to be solvent, his credit was good, and he was paying interest on the money. The note represented a loan made by Alfred Shepard to Seegar.

The evidence disclosing the circumstances attending this transaction is substantially as follows : The administrator testifies that in June, 1872, he notified Seegar that he held the note as administrator, and told him that he wanted it paid by the following February (1873), as he wanted then to make his final settlement ; that Seegar then told him to

put it off until the fall of that year and he would pay it as soon as cotton began to stir; that in October he called on him again for the payment of said note, and Seegar told him that he had the cotton in Savannah to pay the debt, and as soon as it was sold he would pay the note. He (Seegar) also then told him that if he (Shepard) was pushed for the money he would draw on the cotton, but that it was no use as he would get the money as soon by a sale as by a draft. He (Shepard) then told Seegar not to disappoint him as he was making his arrangements to make his final settlement in February following. Seegar said to him not to be uneasy as he would pay it as soon as the money came ; that this interview took place in Seegar's store, and it was the last time that he saw Seegar, as he (Seegar) died soon afterwards. He afterwards called frequently at Seegar's store, but did not see him as he was confined by sickness. After Seegar's administratrix had qualified he called upon John W. Malone, her attorney, who told him that the note would be paid as soon as the estate was somewhat settled. In his cross-examination he states that he understood him to mean that he would pay the note as soon as the condition of the estate could be rightly ascertained if the assets were sufficient to do so; that subsequently he told him the estate was unable to pay more than seventy-five cents on the dollar ; that afterwards he told him the estate could only pay fifty cents, and offered to compromise at that sum in notes and lands at a price stated. This he refused, deeming the valuations too high. No interest on claims against the Seegar estate was to be paid. He then sued the note, and a suggestion of insolvency was made at the same time that he obtained judgment. Seegar had been a prominent merchant in Quincy for years, and was in good standing and credit. The above is substantially the direct examination. Upon the cross he stated in substance, in addition to what

is above written, that he had not notified Seegar to pay the note before June, 1872, as his object was to notify him to pay by February so that his final settlement would not be delayed, and that he called in the following October and told him that he must certainly pay by the following February ; that he (Shepard) " was willing that Seegar should keep the money until February, provided he would certainly· pay it at that time, and Seegar told him that he was going to pay as soon as he sold the cotton, and did not want to keep it until February ; that he looked upon Seegar as good as the bank and he wanted to be lenient with him ; that he had paid out all the money he had collected to the heirs, and was not going to pay out any more until he made his final settlement in February, and, therefore, did not want the money until February, 1873."

S. S. Strange, one of the heirs of Shepard, testifies that about October, 1872, he had a conversation with John T. Seegar relative to said note, in which conversation Seegar told him to push up E. S. Shepard to collect the note, as he was ready to pay it ; that the said Shepard did not care to collect it at present ; that a week or so after this conversation he met Shepard at Shepard's gin-house and repeated to him what Seegar had said about the note, and that Shepard said he did not care to collect it until he knew that all the heirs were ready for a final settlement, as he did not want to pay the interest on the note ; that the note was good, and that he was going to hold on to it " until the last day in the morning," as he did not know what might turn up. The witness, on cross-examination, says that when Shepard told him this he neither objected nor consented to it.

Summing this testimony up it amounts to this : That the administrator deeming the maker of this note solvent such being his reputation in the community, and being a

merchant subject to the vicissitudes of risks and dangers of trade, instead of using any special effort to collect the note, holds it as an investment waiting the time for distribution of the estate ; that shortly before that time the maker dies, his estate turns out to be insolvent, and the money is either wholly or in part lost, the time which the note is retained being over two years. Can any case be found in any State where the law as to investments by administrators of the moneys of an estate is similar to the law of Florida which sanctions such action by the administrator ? Such investments are here required to be made upon such mortgage security as the court may allow, the day of payment of the money or other security not to exceed one year from the date of the obligation. Moore & Montford vs. Felkel, 7 Fla. 44. There are, it is true, other obligations in the shape of bonds which are now authorized investments, but the general statute above stated fixes the policy of the law upon the subject.

In South Carolina, Glover vs. Glover, McMullen's Equity Reports, 154, a distinction is based upon their policy as to investments of such funds. As ordinary personal security. alone is there required the court enquire what motive there could be for calling in what is thought to be a good investment, as all the object to be obtained would be again to invest it upon like or other security. A different rule it is true controls the investment of funds in hand and the collection of sums due an estate. The rule is much more strict as to investments, but the rule as to the collection of notes due an estate is not that the administrator may, because of reputed solvency, postpone the collection of the note of one engaged in trade to the date when a distribution is to be had. An administrator who extends credit up to the time of distribution neglects to collect the asset for as long a time as he can neglect this duty. If it is his duty to collect it

he should do so as soon as he reasonably can. Says the Master of the Rolls in Powell vs. Evans, 5 Ves., 844: " I desire to be understood that debts due upon personal security are what executors without great reason ought not to permit to remain longer than is absolutely necessary." In this case we think that he could have done so if he had endeavored to do it, and that his treating the note as an investment cannot be sanctioned. In the case of Moore & Montford vs. Hamilton, 4 Fla., 118, this court remark " that if an executor without good reason leave money due upon personal security, which though good at the time, afterwards fails, he will be responsible," citing 5 Ves., 839 ; 1 Mad., 298. The note to the case of Powell vs. Evans, 5 Ves., 844, we think gives a very correct statement of the rule so far as applicable in this State : "There may be cases in which it would be injurious to the parties interested if trustees were to press on all the remedies for the recovery of a demand, Sitwell vs. Bernard, 6 Ves., 535, but as a general rule executors are under the necessity of getting in their testators property by all possible remedies ; if any securities seem proper to be continued the court alone, it has been said, must judge of that and give the proper directions ; executors who take upon themselves to exercise a discretion on such points must as in the principal case be responsible for any loss sustained in consequence of their misplaced confidence however good their intention may have been ; Gaskell vs. Harman, 11 Ves., 498, for though it is never the inclination of courts of equity to discourage persons from acting as executors, or to throw difficulties in their way, (Freeman vs. Fairlee, 3 Meriv., 42 ; Tebbs vs. Carpenter, 1 Mad., 298,) still persons accepting a trust of that kind must use reasonable diligence ; if, by their default, any loss arise they must make it good to their testator's estate. Lawson vs. Copeland, 2 Brown, 157 ; Tebbs

vs. Carpenter, *ubi supra ;* see also note 4 to Tew vs. Winterton, 1 V., 451. An executor however like any other trustee or agent will be exempted from responsibility when he has transacted business in the regular and usual manner ; though the loss sustained might by a more than ordinary degree of caution have been avoided ; (see the concluding part of the note to Rowth vs. Howell, 3 Ves., 565,) and that the rule above stated which requires a trustee or executor to call in all outstanding debts or securities at least admits qualifications and restrictions of its generality. See note to Sitwell vs. Bernard, 6 Ves., 520." See also Harris vs. Parker, 41 Ala., 624; Bondurant vs. Thompson, 15 Ala., 202; Dean vs. Rathbone, 15 Ala., 328 ; 2 Perry on Trusts, Sec. 440.

In this case the administrator was bound to call in this note in a reasonable time and reinvest the proceeds or otherwise dispose of them according to law. We think if he had so desired he could have collected it, and failing so to do he must take the risk of treating it as an investment and continuing it without any sufficient reason as he did. The rule is that for worthless paper an administrator is not chargeable and need not sue, and if it be also true that he need not take measures to collect solvent notes, and can postpone action looking to their collection until distribution, then he is practically required to do nothing in the matter of collections, and all the risk falls upon the estate.

The remaining exceptions are based upon allowances made under the provisions of the statute of February 17th, 1833, which is as follows : " Executors and administrators shall be allowed all reasonable charges on account of disbursement of funeral expenses, and in the administration of the estate of the person deceased, and shall also be allowed a fair and just compensation for their services, and also a compensation not exceeding six per cent. on money arising

from the sale of personal property * * and lands of the deceased." McC.'s Dig., p. 98, Sec. 78. This statute was construed in part in the case of Moore & Montford, Executors, vs. Felkel & Wife, 7 Fla., 63. As we understand the statute and the interpretation there given it provides that he be allowed:

First. All reasonable charges on account of funeral expenses.

Second. All reasonable charges incurred in the administration of the estate of the person deceased.

Third. A fair and just compensation for his services.

Fourth. A compensation not exceeding six per cent. on money arising from the sale of real and personal property of the deceased.

In view of this statute we examine the action of the court when controlled by its provisions. An allowance for a sum paid an auctioneer for selling the personal property, we think is a proper credit to the administrator. It is a reasonable charge and disbursement for the benefit of the estate. Sale of the personal property by an experienced auctioneer will result generally in great benefit to the estate. The presence of the administrator is also necessary to see that good security is taken when credit is extended.

The next allowance objected to is on account of a sum for advertising the time and place of sale of the personal property. This is a reasonable and proper charge against the estate.

The next allowances objected to are amounts paid commissioners, cost of court and attorneys' fees in a proceeding for partition had before the Probate Court between the defendant and the plaintiffs. [These items are given in Mr. Malone's brief on page 306.—REP.] It appears that in deference to the heirs the lands were not sold, but were divided among them by an order of the County Court, each heir re-

ceiving his portion without any dissent to the division, but assented thereto, each party drawing for his portion. These parties are here seeking equity against this unfortunate administrator, and yet they urge the rejection of this allowance made for expenses incurred for their benefit with their consent and in deference to them. This is not right upon the part of these heirs. They were here not only "silent when conscience required them to speak," but they profited by this silence, and they cannot now be heard to speak when not only "conscience requires them to be silent," but when they wish to profit by their speaking. They are estopped from making this objection. Seeking equity they must do equity.

The next allowance excepted to is the sum of $24.50. The objections made here to the items composing this charge are so general that we are unable to determine what is the precise position of the plaintiffs. [Mr. Malone's brief, page 306.] They say many of the items are disconnected with the administration and were for personal benefit. Some of the charges are in connection with the partition suit before mentioned. Our views as to these we have expressed. The administrator, it appears, did not live at the county site. This voucher embraces a number of charges for going from his place of residence in the country to the county site in town. Some of them are for a single service which evidently consumed but a short time in their performance. The administrator furnished his own horse and buggy in making the trips, and the charge is usually two dollars. We are inclined to think that the charge in some cases is too much, but we have nothing before us to sustain such a conclusion. We do not know the distance traveled. We do not know but that he was occupied some time in finding those persons with whom he had business, or the length of time he had

to wait after finding them. These and many other considerations must enter into any fair determination of this matter. The allowance must stand, as we cannot say it " is not a fair and just compensation for the service rendered."

The next credit allowed, which was excepted to, is an allowance of $125.85, a commission of 6 per cent. on $2,-097.32, amount of sales of the personal property. We cannot find sales to this amount. We find sales of personal property to the amount of $1,999.57. If this sum represents the amount of " *money arising from the sale of personal property* " the allowance is within the law, and we will not disturb it. If it represents promissory notes or bonds received from purchasers at such sale it is not a commission on " money," and cannot be allowed. The administrator is entitled to commissions on the cash received at such sale, but where credit is extended he is not entitled to a commission except as he collects the note or security. In the case of Moore & Montford, Executors, vs. Felkel and Wife, 7 Fla., 63, the Circuit Court instructed the jury that they should not allow commissions on the *value* of lands and slaves, and this court sustained the instruction, holding that the purpose of the act was " to restrict to a percentage on money arising from sales." To the extent that the allowance conflicts with the views expressed the exception should have been sustained.

The next objection is to an allowance as follows :

" Commissions on $263.56, collections on certain notes and accounts, @ 6 per cent., $15.60. Commissions on $1,-942.25, coin and currency, @ 3 per cent., $58.26."

We cannot understand these allowances otherwise than as being for accounts and money left by deceased. This being so, we are not prepared to say that the allowance of six per cent. for services rendered in collecting the notes and accounts is improper. This is not commissions upon

moneys received from sales, but as a general rule the trouble and time involved in the collection of the moneys due upon the one is the same as collecting the moneys due upon the other. Indeed, as the statute requires security upon notes for personal property sales, and the probability is that what is left by the deceased are simple open accounts and notes unsecured, there would probably be more trouble in collecting the notes and accounts so left than those given upon sales. By analogy to the allowance made by law for the one service the sum allowed here by the court is not excessive. Again, as to this matter, we are in no condition to review this exercise of discretion by the court. We do not know what were the incidents in the matter of expenditure of time and incurring trouble in the collections.

It appears that the sum of $1,942.25 came into the possession of the administrator when he qualified ; that he deposited it with William Munroe for about two months, when he disbursed it to those entitled. He was allowed two dollars for his services in going to town to disburse it, and a compensation of three per cent. for his responsibility in taking care of and paying it out.

The length of this opinion forbids our entering upon the discussion of the general subject of the matter of compensation to trustees, executors, administrators and others occupying similar fiduciary relations. The whole subject is fully and ably presented in the third edition of Perry on Trusts, §§918, 919, and notes.

The question in a case of this character is not the cost of safe keeping and labor alone, but a compensation for responsibility also. Looking to the decisions in the several States the commission and per diem here allowed is reasonable. In Bendall's Distributees vs. Bendall's Admr., 24 Ala., 306, five per cent. on the amount of cash which came to his hands was allowed the administrator. In Vir-

ginia five per cent. upon receipts have been allowed. The
·same amount is allowed in Pennsylvania. We do not
think, however, that a larger sum than three per cent.
should be allowed in this State upon a receipt and disburse-
ment of this character.

The next objection is to an allowance of twenty-four dol-
lars and fifty-eight cents as commission on the amount of
the Seegar note which was charged to the administrator as
a loss occasioned by his non-performance of duty. This
matter should be treated we think in the same way in which
an improper investment is. Under the general principles
of equity the distributees are entitled to receive all such
sums, principal and interest, as were paid upon this note,
the administrator being entitled to compensation for his
services in collecting. This is the extent of the service he
rendered. The rest was neglect and carelessness, not as a
matter of course criminal, but neglect in a business sense.
These sums will be charged to him in his yearly account
and will enter into his yearly balances. For the sum re-
maining due the administrator will be charged simple in-
terest. This we understand to be the rule adopted as to
the Lockerman & Craig note in Moore & Montford vs. Fel-
kel, 7 Fla., pp. 54, 60. See also Sanderson's Administrators
vs. Sanderson, 17 Fla., 862 ; Perry on Trusts, 471.

The next objection is to an allowance of fifteen dollars
($15). We are unable to see from the master's report
where such a distinct entry was made for this service.
The testimony of the defendant is all we find upon the sub-
ject. He states that the memorandum of claims " in Ex-
hibit B. were utterly worthless, or he so regarded them,
that he went to Liberty county, Florida, during the sitting
of the Circuit Court three several times and tried to collect
the claims but could not do so." An administrator, not-
withstanding common report of insolvency of a debtor to

the estate, is entitled to reasonable compensation for services in investigating the facts and ascertaining the truth. As we understand the matter, the administrator is here paid for this service, and upon his ascertaining that nothing could be recovered of the parties he claimed and received credit for the notes with which he had been charged. Had he failed to make such enquiry, and the fact had turned out to be that a recovery might have been had of some of the parties and the money realized, then there would have been a charge for gross negligence in trusting to common rumor and not making an honest enquiry into the matter. The credit was properly allowed.

The next exception was to an allowance for five dollars paid R. S. Tucker, eight dollars to J. E. DuPont and four thirty-five one-hundredth dollars to S. E. Stewart. We find nothing upon this subject in the record except an entry of a credit in the master's account for the sum of $5 paid R. S. Tucker. Referring to voucher number one, upon reference thereto we find it is for sheriff's costs. As to the other items we find a simple entry of $4.35 paid S. E. Stewart, costs on execution against McAlpin and Martin, insolvent. As to the charge of $8 for amount paid to J. E. DuPont we find a receipt for that amount of costs by him as sheriff. The Judge of the County Court having the accounts before him and having allowed them, the presumption before the Circuit Court and here is that the charge is not for the same service. We find nothing in this record to rebut this presumption, except that the receipts are for sheriffs' costs by two different sheriffs. We presume one succeeded the other to the office, and that the charge was for different services by different officers. If the charges are for the same service as a matter of course only one charge can be allowed. The fact that the suit in which these costs were incurred was unsuccessful is not alone sufficient ground to

disallow the costs. If the administrator acted in good faith in bringing the action the costs fall upon the estate in case of failure. In the matter of Horace Grout, 15 Hun., 22 N. Y., Sup. Ct. Repts., 364 ; Collins vs. Hoxie, 9 Paige, 81 ; Moses vs. Murgatroyd, 1 John. Chy., 473. The administrator " is presumed to have acted in good faith, and in the absence of evidence of bad faith on his part is entitled to be reimbursed."

This disposes of the plaintiffs' exceptions in the Circuit Court to the master's report.

The first exception of the defendant in the Circuit Court to the master's report was on account of the charge of the Seegar note to the administrator. That matter has been already disposed of.

The second exception is to the refusal of the master to credit the defendant with the sum of thirty-two fifty one-hundredths dollars, being per diem in attending court in prosecuting the suit against the administratrix of J. T. Seegar. This exception it is insisted should not be allowed because the service was rendered necessary by the laches of the defendant in not collecting the note. It is true that this court has felt constrained to hold, as the Circuit Court did, that this administrator should be charged with this note because looking to all of the circumstances we think such is the law.

It does not necessarily follow, however, that the administrator is not entitled to compensation for his services rendered in connection with this suit or an allowance for costs therein. These services and costs were not incurred in case of a suit between trustee and *cestuis que trust*. The suit here is by the administrator against a stranger debtor to the estate upon a contract with the deceased intestate overdue when it came to his hands. The rule is that if the litigation here in connection with which these expenses and

costs were incurred was just and proper, and apparently for the benefit of the estate, the administrator should be allowed them, notwithstanding the suit did not result in producing the money. In Gouverneur vs. Titus, 1 Edw. Chy., 482, where the defense of the administratrix was unsuccessful, the court say " she must pay the costs of the suit to be taxed. Nevertheless she stands in a representative capacity, * * * and inasmuch as it appears she has not acted otherwise than with a view to benefit the estate she represents the costs must be charged upon the estate and not against her personally. This was done in Moses vs. Margatroyd, 1 John. Chy. Repts., 473." Says Kennedy, J., in Mumper's Appeal, 3 Watts & Sergeant, 443 : " Generally I take it that the ordinary costs and expenses incurred by him (the executor) in either prosecuting or defending a suit as executor for the benefit of the estate are to be paid out of it." Day vs. Day, 2 Green Chy., 557 ; Hardy vs. Call, 16 Mass., 530; Connally vs. Pardon, 1 Paige, 291 ; Roosevelt vs. Ellithorpe, 10 Paige, 415.

In this case the administrator, during the life-time of the debtor, instead of collecting the debt as was his duty, relied upon the promise of the debtor to pay when he needed it for distribution. The debtor dies, the administrator calls upon the attorney of the estate, and the administrator leaves with the idea that all will be right ; that when the assets are made available the debt due his intestate will be paid. He calls again. He is told that the estate cannot or will not pay more than seventy-five cents on the dollar. He calls again. He then finds it doubtful whether it will pay fifty cents, and there is to be no interest allowed on his debt. In the meantime no declaration of insolvency is filed in the County Court by the debtor. Considerably vexed, if not angered, and properly so, we think, from the record here, he sued before the expiration of six months after the

qualification of the administratrix of the deceased debtor,
thus relieving the defendant in the suit of costs under the
statute. Under the then existing circumstances it was emi-
nently proper for him to sue, and sue at once. It was time
for him to act. The estate was growing less and less in
value according to the representations of those entitled to
speak for it. Every time he called he was told he could
get less, and yet no declaration of insolvency. He sued.
He found his heretofore admitted claim resisted, and finally
a declaration of insolvency is filed, and so far as this record
discloses the entire debt is lost.

As to the matter of costs paid the Judge of the County
Court. The exception as to this matter is general. We
do not propose in this or any other case to examine all the
bills of costs filed during a lengthy administration and cull
out what we think are illegal charges. To the extent that
they have been pointed out here we have examined them.
Wherever the charges are illegal they must be disallowed
to the extent they are illegal and charged to the adminis-
trator. His remedy is not against the estate.

As to the exception in the matter of the commission
allowed on $1,942.25 cash received, we have already dis-
posed of the matter.

The only remaining exception to be considered is to the
charge of the defendant by the master with compound in-
terest on $1,514.22 for four years after the commencement
of this suit and after defendant had ceased making settle-
ments with the Court of Probate.

We know of no rule which authorizes a difference in
the rate of interest after the commencement of the suit.
Money received and not re-invested according to law is
presumed to be money " retained " by the administrator,
and the rule of the statute is that the interest must be
added to the principal annually. The administrator can

relieve himself of this liability by paying the money into court upon the institution of the suit, (Perry on Trusts, 3 Edition, Sec. 468, and cases cited;) "but so long as litigation is pending over the fund, and the money is not brought into court, the trustee is bound to keep it invested," and he is liable for the statutory interest. Merritt vs. Jenkins *et ux.*, 17 Fla., 598. This rule, as a matter of course, is subject to the exception of the statute, which is when no good security can be found on which to put out the money at interest. As to the interest on the liability incurred by the failure to discharge his duty as administrator in the matters of the receipt for the gold and the promissory note, we have already indicated our views.

The decree in each appeal is reversed, and the case will be remanded with directions to the Circuit Court to recommit the report to the master with instructions to reform his report in accordance with this opinion and with the principles of equity in this behalf prevailing.