4 U.S. 298
 4 Dall. 298
 1 L.Ed. 841
 Maybin, surviving partner, &c.
v.
Coulon.(a)
Coulon
v.
Maybin, surviving partner, &c.
 Supreme Court of Pennsylvania.
 March Term, 1804
 
 THESE actions having been referred, the referees reported that there was due, in the first, from the defendant to the plaintiff, as surviving partner of Joseph Anthony and Co. a sum of 30,708 16/100 dollars; and that in the second there was no cause of action. To this report, Coulon filed a number of exceptions, of which it is only necessary to state the substance of the single exception, which was the ground of the decision of the Court: to wit, 'That the balance reported to be due to Maybin, arose from a series of unlawful transactions, in violation of the acts of congress, respecting the registering of vessels, and the duties on tonnage and impost; and, consequently, no Court of justice could lend its aid to enforce the recovery.'
 
 
 1
 The facts were briefly these: Coulon, an alien, came to the United States in the year 1794, bringing with him a considerable quantity of merchandize, which he placed in the hands of Joseph Anthony and Co. He had, also, left a considerable property in the Isle of France; and he was not only desirous to have that property brought to America, but to enter into various commercial speculations, with these and other funds, in the European, as well as Indian, markets. He accordingly entered into engagements with Joseph Anthony and Co.; and, in consideration of his making them the depositaries of his funds, with an allowance of ample commissions for services, and of interest for advances, they undertook to purchase vessels and cargoes for him, in their they undertook to purchase vessels and cargoes for him, in their own names; and in like manner to import the return cargoes. Among the vessels purchased for Coulon (some carrying only a
 
 
 
 (a)
 S.C. 4 Yates 24; where the case is more fully reported. sea-letter) was the America, which was registered in New-York, as the property of Joseph Anthony and Co. American citizens; and a cargo afterwards brought in the America, from the Isle of France, though entirely owned by Coulon, was entered at the custom-house of Philadelphia, as owned by them. From the accounts and correspondence produced in Court, as well as before the referees, it clearly appeared, that the balance resulted from these illicit transactions; and that the sum reported to be due to Maybin, was about the amount of the commissions for services, and the interest for occasional advances; the nett price of the vessels and cargoes, having been actually paid from the funds of Coulon.
 
 
 
 2
 The counsel for Coulon insisted, that the referees had erred, in point of law, by giving a sanction to the violation of the acts of congress(c); and that their report could not, therefore, be sustained, or affirmed by the Court. In the course of the argument they cited, 1 Pow. on Contr. 183. 195. 201. 203. 1 Bous. & Pull. 340. 3 T.Rep. 454. 4 T. Rep. 466. 1 Bous. & Pull. 296. Cowp. 341. 5 T. Rep. 599. 1 Bous. & Pull. 556. 4 Burr. 2069. 3 T. Rep. 421. 6 T. Rep. 61. 405. 3 Vez. jun. 373.
 
 
 3
 The counsel for Maybin argued, That advances were made, and services performed, to a great amount, independent of the vessels and cargoes, and were not involved in any illicit imputation; that it did not appear that the sum reported arose out of an illicit consideration, or contract; that it was too late after a reference and report, which liquidated the accounts, to object to the legality of the consideration and contract; and that, even if the general transaction were illicit, still the contract being executed between the vendor and the vendee of the property, the plaintiff, not being the actual vendor, had a right to recover the money paid by Joseph Anthony and Co. to the vendor, at the request, and for the use of the defendant. In support of this last position, the following authorities were cited: 1 Pow. on Contr. 200, 1. 4 Burr. 2069. 1 Bl. Rep. 633. Cowp. 343. 3 T. Rep. 418, 9. 6 T. Rep. 61. 7 T. Rep. 3 Vez. jun. 612, 3. 8 T. Rep. 575. 577.
 
 
 4
 The cause having been argued, on these general grounds, during several days in December term 1803, and March term 1804, the unanimous opinion of the Judges was delivered, upon full consideration, by SHIPPEN, Chief Justice, in substance, as follows.
 
 By the COURT:
 
 5
 There is a just debt due from the defendant Coulon, to the plaintiff, Maybin; and, therefore, as far as the Court could lawfully act, they would be desirous to affirm the
 
 
 
 (c)
 See the Registering Act, 2 vol. 131.; and the impost law, 4 vol . p. 279. report of the referees. Hence, we listened, with particular attention and favour to the attempt of the plaintiff's counsel to distinguish the origin of the sum reported, from the general mass of the illicit transaction. The attempt has not, however, been successful; so that we must decide the question on the principles of law, which are clearly established by the authorities that have been cited.
 
 
 
 6
 The positive provisions of the laws of the United States, respecting American registered vessels; the national policy of our navigation system; good faith towards the belligerent powers; and the very foundations of morality; have been violated in the course of the transaction, now exhibited to us. The act of the Court is necessary to give effect to the report of the referees: but no Court of justice of the United States can lend its aid, at any time, or in any degree, to recover a debt originating in a source so forbidden, so foul, and so pernicious. The report cannot, therefore, be affirmed.(a)
 
 
 7
 Report set aside.
 
 
 8
 Ingersoll, E. Tilghman, and Levy, for Maybin.
 
 
 9
 Du Ponceau and Dallas, for Coulon.
 
 
 
 (a)
 It appeared, that one of the referees, upon discovering the illicit nature of the transaction, declined proceeding; but was persuaded to resume the business of the reference, in consequence of an urgent letter from Maybin, appealing particularly to the sympathy and benevolence of the referee. One of Coulon's exceptions to the report, was pointed at this ex parte communication; and the COURT, in delivering their opinion upon the general question, stated, in strong terms, their disapprobation of one of the parties addressing the referees, by way of confidence, or soliciation, pending the reference, though the letter should not contain any remarks on the merits of the controversy.