Tilghman C. J.
(After stating the facts.) That this Court will not sustain an action originating in an unlawful contract is a principle fully recognised in the cases of Maybin v. Coulon,(a) and Mitchell v. Smith.(b) But whether the contract in this case was originally illegal, is the question.
*320 In the month of December, 1810; when the contract was “entered into, there was no-law prohibiting commercial intercourse between the United States and Great Britain, On the- 2d November, 1810, the President issued his proclamation declaring, that France had revolted her edicts which violated the neutral commerce of the United States. This he was authorised to do by the act of May 1, 1810, and the consequence was, that unless Great Britain revoked her obnoxious orders in council all commercial intercourse between the United States and Great Britain and her'dependencies would be unlawful at the end of three months from the 2d -November, 1810. The illegality of the intercourse therefore depended Upon a contingency, and in the interval between the 2d November, 1810, and the 2d February, 1811, it was lawful to form a plan or contract concerning a voyage from the British dominions in the East Indies, to any port in the United States, to' take effect after the 2d- February, 1811, provided the intercourse should not then be prohibited. Whether the parties to this contract intended to execute their scheme at all'events,' or to relinquish it, in case it should be found to be unlawful after the brig’s arrival at Calcutta, was uncertain. I leftit therefore to the Jury, and their verdict having been for the . plaintiffs, it must be presumed that there was no unlawful intent in the origin of the business.. It follows, that the. contract was not in its origin unlawful, and therefore the defendant was bound to render an account of the money received in Philadelphia and in India. But although the contract was not originally unlawful, it might be, that the law was broken in a later stage of the business. Whatever might be the intent at the commencement of the voyage, yet if the goods Were shipped at Calcutta with an intent to bring, them .into the United,.States, they were liable to forfeiture. Both plaintiffs and-defendant averred in their petition at Charleston, that there wás no intent to violate the law, and it is to be supposed that the Secretary of the Treasury believed them*; otherwise he ought not to have remitted any part of the forfeiture. It must be confessed, however, that the importation into Charleston was. unlawful, and the vessel and cargo 'became thereby liable to forfeiture. But what then ? In consequence' of the remission, new rights were acquired by the plaintiffs. • They became entitled to a large part of .the prorGeqds Of fhé cargo which came into the hands of the defend» *321 ant as their bailiff or receiver, and for which he is accountable. I can see no pretence for refusing to account for the money received from the sales of the cargo; indeed I do not understand that the defendant denies his being accountable, but he says, that he-is accountable only to a certain extent, and on certain principles, and has already fully accounted. Whether he has or has not was a fact for the decision of the jury, and they have decided against him. As to the verdict being against the evidence, our rule is, not to set it aside unless it be clearly so. Now so far is it from being clear that the verdict was wrong, that I incline to think it was right. The defendant ought to account; but to what amount he may be in an-ear I have formed no opinion.
But the defendant supposes, that at all events the verdict is too comprehensive; because the cargo being seized he was discharged from accounting for it. I do not apprehend that this verdict will, preclude the defendant.from shewing to-the auditors in what manner the cargo was taken out of his hands, and so far as it was appropriated to the use of the government, he will be entitled to an allowance. The generality of the verdict will not injure him. It was decided in James v. Browne, (1 Dall. 339.) that in an action of account render between- partners, where the defendant was charged as receiver of money, by the hands of- three persons, the plaintiff having proved the receipt of money from otfe of them only, was entitled tó a general verdict. But at the same time Chief Justice M‘Kean declared, that when the parties came before the auditors, the account should be taken according to the truth of the matter, and he gave many good reasons for construing this action liberally, as we-have no’court of chancery in which a man may be called to acoount. It will not be inferred then from the judgment quod computet entered on this verdict, that the defendant has received all thé precise sums, and at the precise times, mentioned in the declaration. He will have to account for all that he has received, and will be allowed every item. in discharge which he can make out as fairly chargeable , against the plaintiffs.
My opinion upon the whole is against a new trial.
Yeates J.
It has been urged by the defendant’s counsel^ that a general verdict ought not to have been rendered fpr the plaintiffs in this cause, if even part of th^ money charged *322 in the declaration has Keen proved to have come to the de-.. fenclant to be accounted for, inasmuch as the finding of the jury would conclude the auditors hereafter to be appointed, as to the times laid. It is said, the simplicity of the law will not permit contradictory findings and that what might be pleaded in bar to the action cannot bé alleged as a ground of defence before tlie auditors. It is denied, that the plaintiffs had any property in the outward bound cargo, as the monies were obtained on respondentia loans, and that any supposed ownership must necessarily have .ceased by the condemnation of the brig and cargo at Charleston, and any imputed interest in the plaintiffs must take its origin from the remission of.the forfeiture by the secretary of the treasury on the 13th July, 1812, and cannot be extended beyond the 1st August, following. ’ ■ . :
The case of James v. Browne, 1 Dall. 339. shews, that this form of action is liberally extended' in Pennsylvania, where we have no court of chancery to compel disclosures ; as between partners it is-Sufficient for the plaintiff to- charge the defendant generally with the receipt of money to .their joint benefit, and having proved a receipt by any one of the persons mentioned in the declaration, he is entitled to a general verdict'upon, the-plea of he unques receiver. I admit the rules of pleading-in account render in England to be as stated in 3 Wils. 113. and that whatever can be pleaded in bar to the action must be so pleaded, and cannot be pleaded before auditors.' But I deny that the auditors are restricted to the days laid in the declaration.' After a judgment quod computet, all articles of account, though incurred since the writ, are included, and thenvhole brought down to the time when the auditors make an end of the account. 2 Burr. 1086. The ultimate 'object of the suit is to compel a statement of the account, and the auditors will make the proper Charges and allow the proper credits without regard to the verdict of the jury. 1 Dall. 340. Issues may be taken on any items of. the account, ánd the same may be decided by another jury.
I will not anticipate a question which may come before the Court at a future day; bút I scruple not to assert, that to what date soever the right of property in the plaintiffs in the return cargo may be referred under the events which have happened, the defendant was bound upon every principle of law and common honesty to account for any sums of money which re *323 mained of-the proceeds of the.'outward cargo uninvested ih India, unless the voyage, as originally planned and afterwards prosecuted, was-an infraction of the laws of the United States.
The three sum of money loaned to the owners of the brig bn respondentia belonged- to them all as partners in trade. The' securities: given did not alter the nature of the property. Whatever might be the value of the goods purchased therewith on the return voyage,-the plaintiffs as well as the defend,ant remained liable to the several persons from whom they were borrowed. The defendant’s possession of the cash as supercargo, was the possession of his co-partners as well as .of himself to all legal intents and purposes.
' The illegality of the general voyage as .projected, is the strong ground on which the defendant.insists that he is entitled to a new trial. It is not questioned, that if this voyage was really intended to -be pursued at all events^ notwithstanding the intercourse between the United States and Great Britain and her dependencies should be interdicted by the supreme authority of the union, a court of justice here ought not to lend its aid to carry in to execution a contract which evidently opposed principles of public policy. The plaintiffs deny this fact of intention, and assert that it ill' becomes the defendant to contend for a plan, which, if established, plainly evinces that he intentionally broke the duties of a good citizen, and is at variance with his written declaration in a court of justice.
Was there any law of the United States prohibiting any voyage from one of our ports to Calcutta, when the South Carolina sailed from hence on the 29th December, 1810? The •act of congress of 1st May, .1810, revived certain sections of •the previous act of 1st March, 1809, in case the President of .the United States should issue a proclamation, to that effect. But no law existed at the time of the brig’s sailing rendering absolutely such a voyage illegal. If she had been seized by a custom house officer on her outward voyage it will not be contended that a condemnation of -the vessel and cargo must necessarily haye ensued. The provisions of the act of 1st May, 1810, rested on the chapter of accidents in the great political world, frequently resulting from causes of the most trivial nature, and it depended on mere chance, whether they would be called into exercise. It might happen that the law *324 might be repealed, or that Great Britain feelingly alive to her commercial interests might rescind her obnoxious orders in cotlncji,. or jn full confidence of her maritime superiority might choose to engage in a.war with the United States. In either case the meditated voyage if pursued would be legalised. It was chance against chance on whiyh no human foresight could calculate with precision. The 4th section of the act of 1st March, 1809, prohibited the .importation of all goods from Great Britain or Ireland, or any of her colonies or dependencies, or from any port in her actual possession, into the •United States. The 5th and 6th sections render the intention pi the importer material, and the 6th section provides, that.if any articles, the importation of which is prohibited by this act, shall be put on board of any ship or vessel, with intention to import the same into the United States, or the territories thereof, contrary to the true intent of this ác.t, and with the knowledge of the owner or master of such ship Or vessel, &c. such ship or Vessel shall be forfeited, and . the owner and master thereof shall, moreover, each forfeit • ■and pay treble the value of such ai-ticles. It so turned out under the President’s proclamation of 2d November, 1810, that Great Britain not having repealed her orders in council by 2d February, 1811, the. non-intercourse law came into operation, and any person lading goods in any port in the actual possession of the British with intention to import the same into the United State?, became subjected to the forfeitures and penalties of the act. The return cargo was shipped in India after the law came into effect, and under the positive statutory prohibitions, the forfeitures were ipso facto incurred. Intention as to this part of the case is wholly immaterial. But the true question now is, had the law such a retroactive operation as to render the voyage from the port of Philadelphia illegal ab initio, however innocent the minds of the owners, were, and free from all political guilt? I see no such severe meaning in it, and cannot consent to enlarge pains and penalties unless I am fully sensible that it is my imperious duty to. give it such construction.
Whence is it that wc.are to collect the criminal intention which is to poison the voyage throughout from the time of the brig’s breaking ground in this port. On the one band, we have the condemnation of the vessel and cargo in the District Court of South Carolina, which is conclusive as to *325 the breach of the laws of trade," and cannot be questioned: and we have the declaration of the defendant in Calcutta, ~ that he meant to return'to- this port. On the other hand, we have his solemn protestation,‘and' also of Bethel and Chamberlain, under their- several signatures, in the same court, averring that théy had no intent-to br'eak the laws of the United States; that pilot'boats had been despatched in quest of' her to prevent her entering ihe waters of the Delaware; that the brig bore away for Charleston, in distress, otherwise she would not have entered the ports of the United Stuteh. We have the official act of the judge certifying that the "facts as above stated, appeared to him to be true,'¿hd the consequent decision of the secretary óf the treasury, remitting the forfeitures under certain specified conditions. The law of" S'd'March, 1191, declares that the secretary of the treasury shall have power to mitigate of remit fines, forfeitures or penalties, if, in his opinion, the same shall have been incurred without wilful negligence, or any intention of fraud in the ■ persons incurring the same. We have íjtill more, the verdict of a jury on the question fairly submitted to them, whe-' ther the plan' of the voyage was to violate the laws of the United States,'in which case they were told the plaintiffs were not entitled to recover, and to which on their oaths they answered in the negative. The outward voyage, thus sanctioned by the .constituted authorities of the country, whatever might be my private sentiments on the subject, I should deem myself incompetent to ascribe a criminal intent to the commencement of the voyage, and am therefore of opinion that it was not sb corrupt and tainted in its source as to prevent'our interposition to do justice.
" Judge Washington’s opinion, in Gray v. Sims and Bethel, merits every degree of respect and deference in this court. It Will be recollected that the suit there was brought to recover the premium in a policy of insurance, subscribed by Gray on the ship, on the entire voyage of the South Carolina from home to Calcutta and back again, with liberty to touch and trade at an intermediate port. Whether the ship and cargo are to be considered, under every circumstance, as standing on the same footing, or whether the risk, in a case like the present, may be apportioned, may perhaps deserve much consideration. Be this as it may, .1 will barely, observe, that where our judgments are fully satisfied," wé are' bound t6 deliver our own opinions.
*326 Whether the defendant had fully accounted or not, with the plaintiff, was left with the jury for their decision upon all the evidence. The former, it is true, has rendered several accounts, but it is certain they disagreed materially in the suits of their different statements.. It will be the duty of the auditors to state a fair'and just account between the parties, and the defendant will have an opportunity of‘making his exceptions thereto. • My opinion on the whole is, that the motion for a new trial bé denied.
Gibson j. concurred.
New trial refused.

 4 Dall. 298.

 4 Dall. 269