GEORGE RANDALL COOK, APPELLANT, VS. E. A. FERNANDEZ, ENROLLING OFFICER, &C., APPELLEE.

1. The act of Congress of February 17, 1864, exempts from military service "all physicians over the age of thirty years, who were at the passage of the act and for the last seven years had been in the actual and regular practice of their profession."

2. The courts cannot consider any physicians as in the actual and regular practice of their profession, except those who have filed in the office of the Circuit Court their certificates or diplomas, as directed by the State Statute of February 10, 1831.

3. A physician who has not so filed his certificate or diploma will not receive any aid from the courts, either in the collection of his bills or in securing an exemption from military service.

4. The reason of this refusal of aid on the part of the courts is, that the second section of our act of February 10, 1831, makes it a *penal offence* for any individual to "attempt" to practice medicine or surgery without having filed his certificate or diploma as aforesaid, and the courts will not lend their aid to enable any one to reap the fruits of his illegal act.

This case was decided at Tallahassee.

A statement of the case is contained in the opinion of the court.

*Banks & McLeod* and *Smith & Ives* for Appellant.

*L. J. Fleming* for Appellee.

WALKER, J., delivered the opinion of the court.

On the 17th February, 1864, the Congress of the Confederate States passed "an act to organize forces to serve during the war," the first section of which reads as follows, to wit: "That from and after the passage of this act, all white men, residents of the Confederate States, between the ages of seventeen and fifty, shall be in the military service of the Confederate States for the war."

Cook vs. Fernandez—Opinion of Court.

On the 19th day of November, 1864, the plaintiff in error, who had been enrolled and put into the Confederate service under said act, made application to the Judge of the Suwannee Circuit to be discharged therefrom, on the alleged ground that he was exempt under that clause of the 10th section of said act, which exempts "all physicians over the age of thirty years who were, at the passage of said act, and for the last seven years had been in the actual and regular practice of their profession."

On the 29th December, 1864, the writ of habeas corpus having been returned with the body of the petitioner, the Circuit Judge heard the evidence of the witnesses and the arguments of counsel and refused to discharge the petitioner, and his case was thereupon brought before us by writ of error.

Whether the Circuit Judge did or did not err in the ruling as above stated, is the sole question before us, and must depend entirely upon the evidence in the record. Upon looking into the records, we find that the petitioner has resided in this State since the year 1857, but we are unable to find any testimony whatever to show that he has ever been at any time in the "actual and regular practice of his profession" as a physician.

Our statute of February 10, 1831, is very explicit in pointing out the three "methods," one or the other of which every physician must "pursue" in order to be "enabled" to engage in the "actual and regular practice of his profession." Section first of said act reads as follows, to wit:

"Sec. 1. Any individual desirous of practising medicine or surgery in the State of Florida, shall be *enabled* to do so by *pursuing* one of the following methods: first, he shall file in the office of the Circuit Court of the county in which he may intend to reside, a diploma from some Medical College; secondly, or he shall file in the office aforesaid, a certificate, signed by at least two practising physicians residing

in this State, who shall be regular graduates of some Medical College; thirdly, or he shall file in the office aforesaid, a certificate signed by some Professor of a Medical College, that he has attended one course of lectures in some one of the Medical Colleges aforesaid, and also a certificate from one of the physicians aforesaid."

There is no evidence in the record tending to show that the relator ever complied with either of these provisions, and hence we say there is no testimony to show he ever was " in the actual and regular practice of his profession."

If it be suggested that the section we have just read is not prohibitory, but only directory, and that a physician may therefore legally engage " in the actual and regular practice of his profession" without a compliance with its provisions, we answer that even if that be so, it matters not, since the second section of said act comes in and makes it a violation of law, punishable by indictment and fine, for any one to " attempt" to practice medicine or surgery without having first complied with the provisions of said first section. Said 2d section reads as follows, to wit :

"SEC. 2. Any individual failing to comply with the before recited provisions, and *attempting* to practice medicine or surgery, shall, on conviction thereof, be fined in a sum not less than fifty dollars or more than two hundred dollars, at the discretion of the jury." Duval's Dig. 368 ; Thomp. Dig. 503.

Since then, under the second section, a physician commits a penal offence every time he " attempts" to practice medicine or surgery without having complied with the provisions of the first section of said act, it can hardly be said he is in the regular practice of his profession while doing so. To say that a man is regular in his practice of violating the laws of the State, and that because of such regularity he is entitled to the extraordinary protection of a Confederate law, would be absurd.

Cook vs. Fernandez—Opinion of Court.

Our courts do not recognize any as practising physicians except those who have complied with the provisions of our statute, and to them only do they extend aid in the collection of their fees. For no matter how important to his patient the services of a physician may have been, yet, when he sues to collect his fees, if it be pleaded and proved that he has not complied with the provisions of our statute, the court regards him as " attempting" to practice in violation of law, and refuses its aid upon the well settled principle that the law will never give its aid to reward any man for having violated one of its provisions. The court will not say to him, we will indict and punish you if you practice, but at the same time we will enable you to collect your fees earned by the illegal act. Can a man be said to have shown that he has been in the actual and regular practice of his profession for seven years, when he has not shown that he would be able to collect by suit a single fee earned during the whole period? That such is the condition of a physician who has never complied with our statute, we cite the uniform ruling of our Circuit Courts, and also the following authorities. In the case of Roby vs. West, 4 New Hampshire, the court say: " It is not necessary to render a contract illegal that it should be expressly so declared by statute. If a penalty be inflicted by statute, that implies a prohibition"— citing 1 Bin. 110. And again, in the same case, the court say: " The principle that no court shall aid men who found their cause of action upon illegal acts, is not only a well settled, but a most salutary principle. It is fit and proper that those who make claims, which rest upon violations of the law, should have no right to be assisted by a court of justice. It is fit and proper that courts should refuse their aid to those who seek to obtain the fruits of an unlawful bargain. It is fit and proper, when parties come into court to litigate claims founded upon illegal contracts, in relation to which they stand in *pari delicto*, that they should be viewed and treated

in those transactions as outlaws, who have forfeited the protection of the law, and it is fit and proper that they should be left to adjust their unlawful concerns as they can and enjoy the fruits of their transgressions of the law as they may."

In the case of Toler vs. Armstrong, 4 Washington's Circuit Court Repts., 299, Washington, J., said: " I understand the rule, as now clearly settled, to be, that when the contract grows *immediately* out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it." (See also 17 Verm. 105 ; 11 Whet. 258 ; 17 Mass. 258 ; 5 Massa. 395 ; 4 Holast. 352 ; 4 Dall. 298.)

It is clear from these authorities that if the relator had gone before the court to collect a bill, he would not have been recognized as a physician in the actual and regular practice of his profession unless he had shown a compliance with our statute, and on that ground the court would have refused him its aid. How, then, without showing such compliance, could he obtain the recognition and aid of the court when he went before it to procure a discharge from the service of the country." He was found on the soil of Florida, where he had resided for many years, subject to her laws. He alleged that he was a physician in the actual and regular practice of his profession for seven years. The conscript officer denied this allegation. The issue was distinctly made, and the burthen of proof was upon the petitioner. The proof in the record does not sustain his allegation.

Let the judgment be affirmed with costs.