J. W. BRAXTON, APPELLANT, v. CHARLES C. LIDDON AND THOMAS B. LIDDON, COPARTNERS UNDER THE FIRM NAME OF C. C. LIDDON & COMPANY, APPELLEES.

1. A bill was filed by appellees to foreclose an instrument under seal executed by appellant, mortgaging crops grown in 1903 to secure the payment of $641.65, for fertilizers furnished by complainants. Said instrument contains the following language: "It is expressly covenanted and agreed that the vendors do not warrant the aforesaid fertilizers as to quality or its effect upon crops or otherwise, but that the same is bought on my judgment with all faults at my risk. I admit that I have personally examined each and every package of said fertilizer, and that it has been

duly analyzed and inspected and is labeled and tagged as required by law, and that the manufacturers of said fertilizer has filed with the Commissioner of Agriculture of this State a paper giving the name of the principal agent in this State and the name and guaranteed analysis of said fertilizer upon oath, and has in every other respect complied with the law regulating the sale of commercial fertilizers in this State." Held, that the quoted language does not estop the defendant below from setting up in his answer in substance that the consideration for which said instrument was given had failed, that the fertilizer was worthless and spurious, fell short of and did not compare with the guaranteed analysis as represented on the tags which were placed on the sacks of such fertilizer, and that the fertilizer was represented to him when he bought it as a high grade and good guano, because to so hold, would enable manufacturers and dealers to nullify the provisions of Chapter 4983 of the laws of 1901, providing for an inspection and analysis of fertilizers regulating their sale, the fourth section of which act, makes it a misdemeanor for any manufacturer or dealer to misrepresent the ingredients contained in such fertilizers.

2. Where the answer in chancery in a foreclosure suit sets up a failure of the consideration for which the obligation sued on was given the burden of proving the consideration is upon the complainant in the bill; and where such a chancery cause is set down for hearing and is heard upon the bill, answer and replication, no evidence having been taken by either party, and the time has expired for taking testimony, and the answer sets up a failure of the consideration for which the instrument sued on was given, it is erroneous to decree a foreclosure in favor of complainants.

3. A supplemental answer filed after the replication was filed, without a motion, or cause shown after notice, and without leave or order of the judge is filed in violation of Rule 61 of the Rules of the Circuit Court in Equity, and on motion is properly stricken from the files by the judge.

This case was decided by Division B.

Appeal from the Circuit Court for Jackson County.

STATEMENT.

On the 8th day of December, 1903, C. C. Liddon & Company filed a bill to foreclose a mortgage against J. W. Braxton in the Circuit Court of Jackson county, which is based on an instrument in writing made a part of the bill, which instrument is in the following words and figures:

"Marianna, Fla., Apr. 17, 1903.    $641.65

On or before October 1st, 1903, I promise to pay C. C. Liddon & Company, Agents for Goulding Fertilizer Company, Six Hundred, Forty-one and 65-100 Dollars for value received.

This note is to bear interest from maturity at the rate of ten per cent. per annum, and if collected by an attorney after maturity twenty per cent. of the amount due thereon, shall be added thereto for the fees of such attorney, judgment for same to be included in judgment on note.    This note is given for 211 sacks of fertilizer known as Bone Comp. and 80 sacks of fertilizer known as C. S. Mixture and 20 sacks of fertilizer known as Phosphate, advanced to aid me in my business of farming in Jackson county, Florida, the present year; and in order to secure the payment of same, according to its terms, I do hereby create both mortgage and a statutory lien upon all the crops of every kind grown or gathered by me in Jackson county, Florida, the present year.

It is expressly covenanted and agreed that the vendors do not warrant the aforesaid fertilizers as to quality or its effects upon crops or otherwise, but that the same is bought on my judgment with all faults at my risk.    I

admit that I have personally examined each and every package of said fertilizer, and that it has been duly analyzed and inspected and is labeled and tagged as required by law, and that the manufacturer of said fertilizer has filed with the Commissioner of Agriculture of this State a paper giving the name of the principal agent in this State and the name and guaranteed analysis of said fertilizer upon oath, and has in every other respect complied with the law regulating the sale of commercial fertilizers in this State.          ,

I further declare that I have never failed or refused to pay for any fertilizers bought by me; that the aforesaid fertilizers are bought for personal use by me upon my own crops, and the sale of these fertilizers to me upon credit is made upon the faith of these declarations.

In testimony whereof I have hereunto set my hand and seal this the 17th day of April, A. D. 1903.

The above instrument executed in our presence.

HUGH G. SMITH.                    J. W. BRAKTON (Seal).
Jackson County, Florida.

Personally appeared before me, Hugh G. Smith, who being duly sworn, says that he saw J. W. Braxton execute the following instrument for the uses and purposes therein expressed, and that he, Hugh G. Smith, signed the same as a witness.

Witness my hand and official seal this April 24th, A. D. 1903.

MOSES GUYTON,
Clerk of Circuit Court.

On the back of said exhibit 'A' was the following endorsement, which is as follows:

'Filed for record April 24, 1903, Jackson County, Fla. Filed for record April 24th, 1903, and duly recorded in

Book 'V. V.,' page 266, and record verified. Moses Guyton, Clerk of Cir. Ct., By Moses Guyton, Jr., D. C.' "

The appellant Braxton answered the bill, and, among others, set up the following defense: 1. "It is true that he made and executed the note or obligation sued on in the bill of complaint. That said note or obligation was given by the defendant to the complainants solely and exclusively for the purchase of 211 sacks of guano or commercial fertilizer known as Bone Compound, and 80 sacks of guano or commercial fertilizer known as C. S. Mixture, and 20 sacks of guano or commercial fertilizer known as phosphate. That such fertilizer was advanced by the complainants to the defendant for the purpose of aiding the defendant in making and growing his crop in Jackson county, Florida, for the year 1903. That the defendant used said fertilizer in the usual manner in which guano or commercial fertilizers are ordinarily used, and such fertilizer was wholly worthless and was of no benefit whatever to defendant's said crop, but on the contrary was an injury to his said crop, in that it damaged the defendant's crop to such extent that very little crop was made by the defendant, and the crop which was made by the defendant where such fertilizer was used was less than would have been made on the same land if no fertilizer at all had been used; defendant alleges that said fertilizer so advanced to him by complainants for which this suit is brought, not only damaged his crop, but has damaged the productiveness of his land and it has caused him to suffer great damage in the loss of his crop for the year 1903, and all of such damage to defendants crop was the direct result of using said fertilizer for which the note sued on was given, wherefore the defendant alleges that the consideration for such said note was given has

wholly failed, and the defendant has received no benefits for the giving of such note or obligation. And the defendant, by reason of the fact herein before and hereinafter stated, alleges that there was no consideration for the giving of said note sued upon herein.

2nd. The defendant further alleges that the complainants represented to him before he purchased the guano for which the note sued on was given, that such guano was a high grade guano and was a good guano, and was the best, and the defendant relied upon such representations of the complainants and purchased such guano, but after placing such guano in the ground under his crop defendant found that such guano was not benefitting his crop, but on the contrary was injuring his said crop and continued to injure his said crop during the whole of the season, and was a great detriment to the land and prevented the defendant from making a crop of any value on the land on which said guano was used. That said guano was not a high grade guano, but was a worthless and spurious article, wholly unfit for the use of defendant in aiding him to grow a crop. That said fertilizer fell short of and did not compare with the guaranteed analysis as represented upon the tags which were placed upon sacks of such fertilizer. The defendant attached hereto marked exhibit 'A,' a copy of the tag taken from four of ten sacks of fertilizer. A portion of the fertilizer taken from four of these same sacks of fertilizer was forwarded to the Commissioner of Agriculture of the State of Florida, on or about the 11th day of August, A. D. 1903, such sample was sent by Wm. Barnett, a disinterested person, and placed in package in presence of two other disinterested persons, and in that manner forwarded to the said Commissioner of Agriculture, as required by law. And on or

about August 26th, 1903, H. F. Addison received a copy of the analysis, a copy of which is hereto attached, marked exhibit 'B,' which shows a great variance between the guaranteed analysis on the tag and the analysis made by the State Chemist. At the same time and in the same manner a sample of the other fertilizer bought from complainants by defendant, the tag upon which was the guaranteed analysis, or a copy thereof, is hereto attached marked exhibit 'C,' and the analysis made by the State Chemist, or a copy thereof, is hereto attached, marked exhibit 'D,' showing a variance between the guaranteed analysis and the analysis made by the State Chemist. Defendant also attached hereto marked exhibit 'E,' a copy of the letter of the State Commissioner of Agriculture at the time he sent the analysis to said Addison. The said analysis shows that said fertilizer is not the high grade fertilizer it was represented to be by complainants.

5th. The defendant, as is customary, purchased his guano on credit, and that while he signed the note sued on with all the stipulations in it, yet at the same time he was required to sign it in order to get the fertilizer which was represented to him to be good and of a high grade, and the complainants refuse to sell defendant his guano without his signing the obligation herein; that it was not his intention to release the said complainants from their representation to him that said guano was a good guano and of high grade, nor did he intend to buy said guano upon his own judgment and his own risk, nor did he intend to consent that he knew the fertilizer had been analyzed, for he did not know as a matter of fact whether it had been analyzed or not, or whether or not the manufacturer had complied with the laws of Florida in regard to the vending of same, and as to this part of said obligation prays the court to consider the defendant's

demurrer, the said stipulations being against public policy and therefore void in law. That all of the aforesaid stipulations were embraced in a printed note which he signed for said guano and were not put in such note with his knowledge or consent, but were printed in the notes when they were made by the printer, and it was the only note that the defendant could sign and get the guano on credit; that he did not read it over before signing it because he knew he would be required to sign it before he could get the guano on credit; he did not know that it contained the stipulations that he bought it at his own risk and that it had been duly analyzed."

A replication was filed to this answer on December 26th, 1903, and after it was filed the appellant Braxton without any leave or order of the court filed a supplementary answer to the bill. A motion was made to strike this supplementary answer. Afterwards the case was set down for hearing upon bill, answer and replication on the 25th of April, 1904, no evidence having been taken by either party. There is some confusion in the dates of filing of the papers, but we think it reasonably certain that the time for taking testimony had expired when the case was set down for final hearing.

The Circuit Judge decreed that the supplementary answer be stricken, and also decreed that complainants entitled to foreclosure, the amount due them for principal, interest and attorneys' fees to be $839.33 and costs, and in default of payment within five days that the defendant and all persons claiming by, through or under him be forever barred and foreclosed of all right and equity of redemption in and to the personal property described in the bill and that the same be sold, &c. An appeal was taken from this decree to this court.

*Jno. M. Calhoun,* for Appellant.

*Benj. S. Liddon,* for Appellees.

HOCKER, J., (*after stating the facts.*)

The first assignment of error challenges that part of the decree of the Chancellor in which he struck from the files the supplemental answer of the defendant Braxton. This supplemental answer was filed without a motion or cause shown after notice, and without leave or order of the judge, and was, therefore, filed in violation of Rule 61 of the Rules of the Circuit Courts in Equity. The Chancellor did not err in striking it from the files.

The next assignment of error questions the decree rendered in favor of the complainants. The cause was set down for hearing by complainants below, and heard upon the bill, answer and exhibits; no testimony having been taken by either party.

Unless it can be held that the language of the instrument sued on creates an estoppel against the defenses of the answer, then the question presents itself as to the sufficiency of the defenses, and the further question whether the burden of proof as to the consideration was not thrown upon the complainants. That language is as follows: "It is expressly covenanted and agreed that the vendors do not warrant the aforesaid fertilizers as to quality or its effect upon crops or otherwise, but that the same is bought on my (vendee's) judgment with all faults at my risk. I admit that I have personally examined each and every package of said fertilizer, and that it has been duly analyzed and inspected and is labelled and tagged as required by law," &c.

Chapter 4983, laws of 1901, provides for the inspection and analysis of fertilizers and regulates their sales. The act is intended to protect those who buy fertilizers, and by its fourth section makes it a misdemeanor for any manufacturer or dealer to misrepresent the proportion of ammonia, phosphoric acid or potash or other ingredients contained in such fertilizers. We are of opinion that the language of the instrument sued on does not operate as an estoppel. To give it that effect would be putting it in the power of manufacturers and dealers to require buyers to sign contracts, which would practically nullify the provisions of Chapter 4983, and would aid in the enforcement of contracts which are plainly against public policy. 15 Am. & Eng. Ency. Law (2nd ed.) 1014; 9 Cyc. 474, *et seq,* and cases cited; Pacific Guano Co. v. Mullen, 66 Ala. 582; Prescott v. Battersby, 119 Mass. 285; Strand v. Griffith, 97 Fed. Rep. 854; Cook v. Fernandez, 11 Fla. 100; Bryan v. Dennis, 4 Fla. 445. We are also of opinion that the first and second paragraphs of the answer taken in connection with the fifth set up good defenses to this suit, if they shall be found to be true, and we are still further of opinion that the first paragraph sufficiently sets up the defence of a failure of consideration, which under the rule of this court imposed the burden of proof upon the complainants to overcome this defence. Kellogg v. Singer Manufacturing Company, 35 Fla. 99, 17 South. Rep. 68.

This case having been finally heard, and the decree having been made on the bill, answer and replication, without testimony, it follows that the court below erred in making the decree in favor of the complainants.

19 S C

The decree is reversed with directions for such other proceedings as may be in accordance with equity.

TAYLOR and COCKRELL, JJ., concur.

WHITFIELD, C. J., and SHACKLEFORD, J.. concur in the opinion.

PARKHILL, J., disqualified