J. W. Braxton, *Appellant,* v. C. C. Liddon and Thos. B. Liddon, Co-partners as C. C. Liddon & Co., *Appellees.*

55  785
59  582
159— 583
160  399

1. Orders enlarging the time for taking testimony in equity causes are within the sound discretion of the judge, when special cause is shown; and unless abuse of such discretion appears the appellate court will not interfere.

2. The appellate court reviews the action of the trial judge on the report of a master in equity causes, and not the action of the master *per se*, therefore an assignment of error that "the master erred in the report which he made to the court" cannot be considered.

3. Where an answer in a foreclosure proceeding is not excepted to, but the averments of the several paragraphs of the answer set up good affirmative defenses to the suit, such defenses may be established by proofs even though the answer contains matters that do not constitute a defense.

4. In a suit to foreclose a lien upon crops for fertilizers an averment of the answer that the fertilizer did not compare with the guaranteed analysis required by the statute is a good defense, but averments that the fertilizer injured the crops and land without reference to the failure of the fertilizer to comply with the guaranteed analysis, is not a good defense when the purchaser has by written agreement expressly relieved the vendor of liability for the fertilizer as to "its effects upon crops or otherwise." Defenses growing out of the failure of the fertilizer to conform to the analysis required by the statute are not affected by agreements since such agreements are contrary to the policy of the statute and will not be enforced by the courts.

5. In a proceeding to foreclose a lien upon crops for fertilizers used on them where non-compliance with the guaranteed analysis and other defenses are set up and the finding "that the fertilizer was up to the guaranteed analysis" is sustained by the evidence, and the other defenses are not available because of an agreement affecting them, the decree of foreclosure will not be disturbed.

This case was decided by Division A.

Appeal from the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*J. M. Calhoun,* for appellant;

*Benj. S. Liddon,* for appellees.

WHITFIELD, J.—On a former appeal it was held that in this proceeding in equity to foreclose a lien upon crops for fertilizers, the answer setting up a failure of the consideration for the lien obligation put the burden of proving the consideration upon the complainant; and as the hearing was on bill, answer and replication after the time for taking testimony had expired and no testimony was taken, the decree of foreclosure was reversed. Braxton v. Liddon & Co., 49 Fla. 280, 38 South. Rep. 717.

After the cause was remanded, testimony was taken and a decree of foreclosure rendered, from which the defendant J. W. Braxton took an appeal, and assigns as errors: (1) an order extending the time for taking testimony; (2) an order overruling a motion to strike the depositions of certain named witnesses; (3) "the master erred in the report which he made to the court filed April 4th, 1907"; (4) overruling exceptions to the master's report and in entering final decree for the complainant.

Upon the reversal of the decree on the former appeal the cause was remanded for such proceedings as may be in accordance with equity. The taking of testimony in a proper manner is a proceeding in accordance with equity, and was of course contemplated upon remanding the cause.

Equity Rule 71 provides that "three months, and no more, shall be allowed for the taking of testimony after the cause is at issue, unless the judge shall, upon special cause shown by either party, enlarge the time; and no testimony taken after such period shall be allowed to be read in evidence at the hearing."

The three months allowed by the rule for taking testimony after the cause was at issue, had expired when the cause was remanded from this court. Orders enlarging the time for taking testimony in equity causes are within the sound discretion of the judge, when special cause is shown; and unless abuse of such discretion appears the appellate court will not interfere. On this record it cannot be said that the judge abused a sound discretion in enlarging the time for taking testimony. Tuten v. Gazan, 18 Fla. 751; Long v. Anderson, 48 Fla. 279, 37 South. Rep. 216; Lykes v. Beauchamp, 49 Fla. 333, 38 South. Rep. 603.

No order overruling a motion to strike out depositions appears in the record, so the second assignment of error is of no avail.

The appellate court reviews the action of the court on the report of a master in equity causes, and not the action of the master *per se,* therefore the third assignment of error that "the master erred in the report which he made to the court, filed April 4th, 1907," cannot be considered.

It is contended under the fourth assignment of error that the court erred in overruling exceptions to the master's report and in rendering the decree for the complainant, because the proofs show the fertilizer did not have a good effect on the crops.

The answer was not excepted to and the court did not pass on the propriety of all its averments. Even though the answer contains immaterial matter, it does

aver that the fertilizer was "wholly worthless" and "fell short of and did not compare with the guaranteed analysis as represented upon the tags which were placed upon sacks of such fertilizer," and that defendant by his agreement did not "intend to consent that he knew the fertilizer had been analyzed, for he did not know as a matter of fact whether it had been analyzed or not," and that the fertilizer "was an injury to his said crop" and "damaged the productions of his land," and that "such damage to defendant's crop was the direct result of using said fertilizer," wherefore the consideration for the lien "wholly failed."

It was held on the former appeal "that the first and second paragraphs of the answer taken with the fifth, set up good defenses to this suit, if they shall be found to be true."

If the fertilizer did not compare with the guaranteed analysis as averred in the answer, there was a good defense. The damage to the crops and land as averred may have been consequences of the deficiency in the fertilizer as compared with the guaranteed analysis and such deficiency may have rendered the fertilizer "wholly worthless," causing a failure of consideration.

The court confirmed the finding of the master "that the fertilizer was up to the guaranteed analysis, though the crops are shown from a preponderance of the evidence not to have been good."

If the fertilizer did not substantially meet the requirements of the analysis placed on the sacks containing it in compliance with the statute, there was a defense, even if the purchaser signed an agreement in writing containing the following: "and it is expressly covenanted and agreed that the vendors do not warrant the aforesaid fertilizers as to quality or its effects upon crops or otherwise, but that the same is bought on my judgment

with all faults at my risk. I admit that I have person-
ally examined each and every package of said fertilizer,
and that it has been duly analyzed and inspected and
is labelled and tagged as required by law." To the ex-
tent that this agreement seeks to relieve the vendor of
liability for damage resulting from any afilure of the
fertilizer to contain the ingredients stated in the analysis
under which it was sold, it will not be enforced, be-
cause it is contrary to the policy of the statute designed
to secure purchasers of fertilizers from adulteration or
deficiencies of the constituent elements, indicated by the
analysis under which it is sold. Braxton v. Liddon &
Co., *supra.*

The defense sought to be interposed by the answer
that the fertilizer injured the crops and land without
reference to the failure to comply with the guaranteed
analysis is not admissible since the agreement signed by
the defendant expressly relieved the plaintiff of liability
for the fertilizer as to "its effects upon crops or other-
wise," and as this part of the agreement to the extent
that it is not dependent upon the analysis, is not con-
demned by statute as above stated, it is binding on the
defendant in the absence of fraud.

The court confirmed the findings of the master, in-
cluding the one "that the fertilizer was up to the guar-
anteed analysis," and this is not controverted.

The master found "the crops are shown from a pre-
ponderance of the evidence not to have been good," and
the evidence sustains the finding, but the decree is not
for that reason erroneous.

The agreement signed by the defendant relieved the
complainant of all liability for the effect of the fertilizer
on the crops or otherwise; and the defendant cannot
present that matter as a defense, if the damage was not
the result of deficiencies with reference to the guaranteed

analysis. The policy of the statute extends only to the analysis and the results attending a failure to comply with the guaranteed analysis. As the finding that "the fertilizer was up to the guaranteed analysis" is sustained by the evidence, the only legal defense interposed fails.

The attorney fee provided for in the agreement signed by the defendant was allowed in the decree, and it is shown by the evidence to be reasonable, therefore the defendant cannot here complain of it.

The decree is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR and HOCKER, JJ., concur in the opinion.

PARKHILL, J., did not take part.