CHARLES  H.  CONVERSE,  *Appellant*,  v.  KATHRYN  E.
CONVERSE, *Appellee*.

## Opinion Filed May 5, 1921.

1.   In suits involving the marital status and rights, strict rules
of procedure are not required; and where the rights of the
parties are in substance protected, the proceedings are large-
ly in the discretion of the trial court.

2.   Orders enlarging the time for taking testimony in equity
causes are within the sound discretion of the judge, when
special cause is shown; and unless abuse of such discretion
appears the appellate court will not interfere.

3.   Where there has been failure to take testimony within the
time allowed by Equity Rule 71, and laches in applying
for enlargement of time to take it, the enlargement should
not be granted except upon strong showing of disqualifica-
tion or positive hindrance to act, or of excuse in the in-
dulgence or assent of the other side.

4.   Where no testimony has been taken in a suit to set aside
a decree of divorce and the time allowed by the rule for
taking testimony has expired, and counsel for complainant
makes affidavit "that a material part of the claim of the
complainant depends upon the testimony of" the complain-
ant and others whose names and their addresses in another
State are given, and counsel also makes affidavit to the ef-
fect that the delay was due to his impression that he was
extending a courtesy to opposing counsel, an order denying
a motion to dismiss and extending the time for taking testi-
mony will not be reversed as being an abuse of discretion
or as being without a sufficient predicate.

An Appeal from the Circuit Court for Monroe County;
H. Pierre Branning, Judge.

Affirmed.

*Wm. H. Malone,* for Appellant;

*W. Hunt Harris,* for Appellee.

WHITFIELD, J.—On March 4, 1919, a bill in equity was filed by Kathryn E. Converse to have a decree of divorce set aside and declared null and void. An answer was filed May 5, 1919. On August 6, 1919, the defendant filed a motion to dismiss on the ground that on "May 5th, 1919, he filed his answer to the bill, denying all the allegations made in the bill, specifically and generally, thereby making said cause at issue, under Chapter 6907 of the Acts of 1915. That since that date no motion for an order of reference, no testimony has been taken, and no action whatsoever on the part of complainant has been taken in said cause. That under Rule Seventy-one of Equity Rules of the Circuit Court, said cause should be dismissed. That more than three months has expired since said cause has been at issue. Therefore, defendant moves the court that this cause be dismissed at the cost of the complainant, and he will ever pray."

On August 19th, 1919, the complainant applied for a commission to take testimony, and in support thereof filed an affidavit in which it is stated that the "cause is now at issue. I believe that a material part of the claim of the above complainant depends upon the testimony of Kathryn E. Converse, and Margaret Ellen Stanley, who reside at No. 115 Wellington Avenue, and William Stanley, who resides at No. 45 Wellington Avenue, and Maria Malley, who resides at No. 5 Clinton Street, all being residents of the City of Newport, in the State of Rhode Island. Said witnesses reside outside of the jurisdiction of the State of Florida, and are not able to be present to give their testimony at the trial of said cause."

On August 26, 1919, complainant's solicitor, in a receipt for a copy of notice and motion to dismiss the cause, stated that "in acknowledging service, allege the truth to be that the request, both *verbal and written*, of *W. H. Malone, Esq.,* the solicitor for the complainant, I refrain from proceeding with the case and the taking of testimony. The said W. H. Malone, at the time being a member of the Florida Senate, and not being able to be present in Key West at the taking of testimony, wrote and requested that no further steps be taken in the matter until his return to Key West, at which time he would take the matter up with me. Upon the return of the said W. H. Malone to Key West, I requested him to agree upon taking testimony before a Notary Public without the necessity of suing out a commission; the said W. H. Malone thereupon advised me that he was very busy and requested a further delay. I hereby give notice that I will apply to the Hon. H. Pierre Branning as soon as he returns to Miami, Fla., for an order extending the time for taking testimony."

In support of a motion for extension of time for taking testimony, complainant's solicitor filed an affidavit in which it is averred that "the answer of the defendant in the above entitled cause was filed on the 5th day of May, 1919. At this time W. H. Malone was the solicitor for the defendant, and was a member of the Senate of the State of Florida. I received a letter from Mr. Malone, dated at Tallahassee, Florida, in which he advised me that the answer had been filed, also that he would not be able to return to Key West until after the Legislature had adjourned. And the said W. H. Malone, as the solicitor for the said defendant, requested me, as the solicitor for the complainant, not to take any further steps in the case until after his return to Key West.

When the said W. H. Malone returned to Key West, or a short time thereafter, I interviewed him and requested him to agree with me that we would take the testimony of the complainant and her witnesses, who resided outside of the State of Florida, before some Notary Public, and thus avoid the time and expense of suing out a commission. Mr. Malone told me that he thought we could agree, that he would want a copy of the direct interrogatories and time to file cross interrogatories; that he was very busy catching up with his work that had accumulated during his absence in Tallahassee, and requested me to let the matter rest a little while longer and then we could get together, or words to that effect. In order to oblige the said Malone and I refrain from proceeding in the cause until the 19th day of August, 1919. Upon said date, not having heard from the said Malone in the meantime, I filed in this court written interrogatories to be propounded to Kathryn E. Converse, the complainant, and Margaret Ellen Stanley, William Stanley and Maria Malley, of Newport, R. I., and served a copy of the same upon the said W. H. Malone, as solicitor for complainant, together with written notice of the reason for taking said testimony by deposition, and at the same time I filed an affidavit in support of the application for the issuance of a commission to take said testimony.

"On the 26th day of August, 1919, I was served with a notice that the defendant had on the 7th day of August, 1919, filed in the above cause a motion to dismiss said cause under Equity Rule 71. This is the first notice that I have ever had of the filing of said motion.

"The complainant has been ready at all times since the cause has been at issue to take her testimony and I have been under the impression that the delay in proceeding

to take the testimony in her behalf was a courtesy extended to William H. Malone, solicitor for the defendant."

In opposition to the motion to extend time for taking testimony, the defendant's solicitor filed.an affidavit containing the following: "I have read the copy of the affidavit prepared and submitted by W. Hunt Harris, solicitor for complainant. That some of the matters detailed in said affidavit in relation to correspondence from Tallahassee to Key West, between myself and the said W. Hunt Harris, are true and it is true that a conversation took place in relation to said cause as soon as my return. That at no time, either in correspondence or in conversation, has any extension of time been granted at my request. That no agreement as to an extension of time was made. That the facts in relation to said cause are as follows: I left Key West for Tallahassee on the evening of April 4th, 1919. That the following Monday, April 7th, was the rule day on which the defendant was cited to appear by the services of a subpoena. Before I left Key West for Tallahassee, on the 4th day of April, I prepared a praecipe for appearance for the defendant, and filed it with the Clerk of the Circuit Court. I did this to avoid a decree *pro confesso* being entered against the defendant on the said 7th day of April. That while I was in Tallahassee, as a member of the State Senate, I prepared an answer for the defendant and sent it to Key West to be filed on the 6th day of May, 1919. I returned to Key West on the 9th day of June, 1919. That during my absence from Key West in Tallahassee there was an exchange of letters between W. Hunt Harris and myself, and in some of the letters references were made to the Converse case.

"The following is a complete copy of letters with references made to said cause:

"In a letter from myself to W. Hunt Harris, dated at Tallahassee, April 18th, 1919, the following paragraph was sent in relation to the Converse case, the letter embracing other subjects:

" 'The day before I left, I went to the Court House, to see the Converse papers, and the papers were not in the office. The clerk told me that you had them. But I prepared a praecipe for my appearance on the April Rule Day, and filed it with him, and I will prepare an answer to file on the May Rule Day. My particular reason for this is to hold the case up until I can return to Key West and get in touch with the case, and as you perhaps know the court-martial proceedings have been stayed, pending the result in the civil case, and if the other case is disposed of before I return it will precipitate matters in the court-martial case, and be very embarrassing to me.'

"I received a letter from W. Hunt Harris, dated Key West, Florida, April 22nd, 1919, which letter contained other matters, but the following paragraph in relation to the Converse case:

" 'I will hold the Converse case in order that you may file your answer, however, it is my opinion that an answer will get somebody into serious trouble,—attorneys for complainant for instance. The master says he can explain.'

"I wrote a letter from Tallahassee, April 24th, 1919, to W. Hunt Harris, containing other subjects, but the following paragraph in relation to this case:

" 'I will try to have the answer in the Converse case

ready for the Rule Day in May, but if I should slip a day or two, I trust that it can go over for a few days, since we could not take testimony before I return to Key West anyway. I assure you it is not my purpose to delay the matter unreasonably, but we are in a position where we must make a defense to the civil case, as the court-martial case depends to a large extent on this case.'

"I received a reply from W. Hunt Harris to the letter mentioned above, but no reference whatever to the Converse case.

"On May 3rd, 1919, I mailed a letter to W. Hunt Harris containing references to other subjects, but the following paragraph in relation to the Converse case:

" 'I mailed the answer in the Converse case to Converse several days ago and told him to sign it and file it with the Clerk. I also sent a copy for him to sign it and give it to you. No doubt this was done so by this time. We can discuss the case in detail as soon as I return, as I presume you are in no hurry to settle the case.'

"That no other correspondence whatsoever passed between W. Hunt Harris and myself in relation to the above entitled cause.

"That during the month of June, in a conversation between W. Hunt Harris and myself in relation to Converse case, he asked if I would agree upon a Notary Public, who could take the testimony of witnesses outside of the State of Florida, to which I replied that I would like for him to give me a copy of his interrogatories in order that I may file cross-interrogatories. No requests were made by either W. Hunt Harris or myself for an extension of time in the taking of said testimony. That I have never agreed to an extension of time for the taking

of said testimony. That during the time I was absent in Tallahassee no extensions were asked or granted, but that all papers required to be filed were prepared and filed by me at the time required by law. That I have been at all times ready to file whatsoever cross-interrogatories deemed necessary to any deposition proposed by the complainant. That no depositions were prepared or anything done until August 19th, 1919, more than three months after the said cause had been at issue. That if W. Hunt Harris was delaying the matter out of any courtesy to me, it was not at my request.

"Deponent further says, as follows: My first connection with this case was to defend the defendant in a court-martial proceedings in the United States Navy. In the court-martial proceedings I questioned the jurisdiction of the naval courts to try the defendants on the grounds that the acts complained of were cognizable by the civil courts of the State of Florida. That this cause was then pending. That I secured a ruling from the naval authorities that it was not the policy of the Navy to interfere with any case pending in the civil courts or to institute any proceedings which may raise the question of a conflict of jurisdiction, and the court-martial proceedings was withdrawn pending the settlement of the case in the civil court. In my correspondence with Judge Harris in which it was stated that a final disposition of the case before I returned to Key West would make it embarrassing to me, was because the court-martial proceedings may be re-instituted, making it necessary for me to be in Key West, as can be seen by remarks in the letter of April the 18th, 1919.

"In the paragraph of the letter from W. Hunt Harris to myself dated April 22nd, in which it is stated that in

case 'an answer is filed, will get somebody in serious trouble—attorneys for complainant, for instance,' that W. Hunt Harris did not mean himself, as he is the attorney for complainant, neither did he mean myself, who is now representing the defendant, but it was construed by me and is still believed by me that he had reference to other attorneys in a former suit.

"The motion by defendant to dismiss the case under the Equity Rule Seventy-one was filed on the 7th day of August, 1919, with the Clerk of the Circuit Court, which is in itself constructive notice to all parties in interest in the case. No formal written notice was served on Judge Harris by reason of the fact that it was not desired to set the motion down for hearing while the Judge of the Circuit Court was on his vacation. Within a reasonable time from the return of the Judge of the Circuit Court, notice was served of the purpose of having the motion heard."

An affidavit made by another solicitor states that he took part in a conference of attorneys in the case and that "Mr. Malone notified Mr. Harris that the Legislature was about to meet and that he had not yet drafted the answer in the above case, and it was agreed by and between Mr. Malone and Mr. Harris that nothing further would be done in the above cause until after the Legislature had adjourned and Mr. Malone should return to Key West."

The following order was made by the Chancellor:

"The above cause coming on to be heard upon the motion of the defendant to dismiss the above cause under Equity Rule 71—also upon the motion of the complainant for an order extending the time in which to take testimony:

"And the Court being fully advised in the premises:

"It is ordered that the motion of the defendant to dismiss said cause be and the same is hereby denied:

"It is further ordered that the complainant have 40 days from the entry of this order in which to take her testimony:

"It is further ordered that said cause be and the same is hereby referred to J. Lancelot Lester, an attorney of this court, as Special Master in Chancery, to take the testimony herein, and report the same to this court."

Defendant appealed.

Equity Rule 71 provided that "three months, and no more, shall be allowed for the taking of testimony after the cause is at issue, unless the judge shall, upon special cause shown by either party, enlarge the time."

Under Chapter 6907, Acts of 1915, where an answer in chancery contains no set-off or counter-claim, "the cause shall be deemed at issue upon the filing of the answer." No set-off or counter-claim was asserted in the answer in this case and the cause was at issue when the answer was filed May 5, 1919.

In suits involving the marital status and rights, strict rules of procedure are not required; and where the rights of the parties are in substance protected, the proceedings are largely in the discretion of the trial court. Parramore v. Parramore, 61 Fla. 701, 55 South. Rep. 83.

Orders enlarging the time for taking testimony in equity causes are within the sound discretion of the judge, when special cause is shown; and unless abuse of such discretion appears the appellate court will not inter-

fere. Morgan v. Howell, 74 Fla. 334, 76 South. Rep. 869. See also Tuten v. Gazan, 18 Fla. 751; Braxton v. Liddon, 55 Fla. 785, 46 South. Rep. 324; McMillan v. Warren, 59 Fla. 578, 52 South. Rep. 825.

Where there has been failure to take testimony within the time allowed by Equity Rule 71, and laches in applying for enlargement of time to take it, the enlargement should not be granted except upon strong showing of disqualification or positive hindrance to act, or of excuse in the indulgence or assent of the other side. Magbee v. Kennedy, 26 Fla. 158, 7 South. Rep. 529. See also Lykes v. Beauchamp, 49 Fla. 333, 38 South. Rep. 603; Mayfield v. Wernicke Chemical Co., 65 Fla. 113, 61 South. Rep. 191; Morgan v. Howell, 74 Fla. 334, 76 South. Rep. 869; Rausch v. Equitable Life Assur. Soc. of United States, 77 Fla. 846, 82 South. Rep. 295.

This court reversed an order refusing an extension of time for taking testimony in Long v. Anderson, 48 Fla. 279, 37 South. Rep. 216.

The "special cause shown" here for an extension of time for taking testimony is that counsel for the complainant below was "under the impression that the delay in proceeding to take the testimony" for complainant "was a courtesy extended to * * * the solicitor for the defendant." In reply, counsel for the defendant states that if complainant's counsel "was delaying the matter out of any courtesy to me, it was not at my request." The showing made indicates a mutual misunderstanding of counsel as to conversations between them relative to proceeding in the cause. It was the province of counsel for the complainant to move in the matter, and the delay from June to August may not have been fully justified; yet as it is not clear that the impression of such counsel

that he was delaying the taking of testimony as a courtesy to opposing counsel, was wholly unwarranted by the conversations had between counsel after counsel for the defendant returned from Tallahasssee to Key West in June, it cannot be fairly said that on the "special cause shown" the chancellor abused his discretion in extending the time for taking testimony. Magbee v. Kennedy, *supra.*

Affirmed.

TAYLOR, ELLIS AND WEST, J. J., concur.

BROWNE, C. J., dissents.

BROWNE, C. J., dissenting.

The application in this case for extension of time beyond that prescribed by Equity Rule 71 for taking testimony in chancery causes, in no wise complies with the rule laid down in the latest decision of this court on the subject. In Rausch *et al.* v. Equitable Life Assur. Soc., 77 Fla. 846, 82 South. Rep. 295, the court reiterated the rule that the extension of time for taking testimony after the expiration of the period prescribed by the rule, is a matter in the sound judicial discretion of the lower court, which will not be disturbed unless there is a palpable abuse of such discretion. The rule was then materially narrowed in this very clear and positive language: "In a motion for an extension of time for the taking of testimony, the party applying should state why the testimony was not taken within the time and *the fact which he expects to prove set forth.* It is not sufficient to say that the proposed evidence is 'admissible and pertinent to the

issue and relates to controlling facts involved in the action.' "

In the case under consideration the motion did not even state that the testimony was material, admissible or pertinent, but merely recited: "Now comes the complainant, by her Solicitor W. Hunt Harris, and moves the court to extend the time for taking the testimony of the complainant to a period included within 40 days from the issuance of entry of an order extending the time to take testimony."

Two affidavits were filed in support of the motion, but apart from naming four persons whose testimony it was desired to take by deposition, the affidavits are devoted entirely to explaining why the testimony was not taken within the time required by the rule. Nowhere in the record does it appear what the facts were which the applicant expected to prove, as they are not set forth in the motion nor in the affidavits in support thereof.

In the Rausch case, *supra*, the application for extension recited among other things, "that the evidence of such witnesses is essential to the proper defense of said action, that the evidence which will be given by the said two witnesses is admissible and pertinent to the issue and relate to controlling facts." Even these allegations, which the court said in the Rausch case were not sufficient to require the court to grant the extension, are lacking in the application in the instant case.

Without overruling the Rausch case, I cannot see how the order appealed from, extending the time for taking testimony after the expiration of the period prescribed by the rule, can be affirmed. If the essential requirements enumerated in the decision in the Rausch case are to be considered as overruled by the decision in the instant

case, I think we should say so in order that the profession may know what to be governed by.

I think greater latitude should be given CircuitJudges in the matter of extending time to take testimony, and that the rule laid down in the Rausch case is too restrictive. But until overruled it should be controlling, and, if applied in the instant case, would require the reversal of the order appealed from.

I regret that I cannot concur in the decision.